OPINION
{¶ 1} Michael W. Bekesz appeals from the judgment of the Lake County Court of Common Pleas, finding him guilty of breaking and entering, and sentencing him to twelve months imprisonment. We affirm. *Page 2 
 {¶ 2} February 14, 2006, the Lake County Grand Jury returned an indictment in four counts against Mr. Bekesz: Count 1, breaking and entering, in violation of R.C. 2911.13(B), a fifth degree felony; Count 2, disrupting public services, in violation of R.C. 2909.04(A)(1), a fourth degree felony; Count 3, possessing criminal tools, in violation of R.C. 2923.24, a fifth degree felony; and, Count 4, tampering with evidence, in violation of R.C. 2921.12(A)(1), a third degree felony. February 17, 2006, Mr. Bekesz signed a waiver of his right to be present at arraignment; and, the trial court entered a plea of "Not Guilty" to each count on his behalf.
 {¶ 3} Jury trial commenced March 13, 2006, and continued the following day. The following facts are culled from the trial transcript.
 {¶ 4} Christmas Eve, 2005, shortly before 1:00 a.m., Patrolman Ryan Heramb of the city of Mentor Police Department was travelling eastbound on Mentor Avenue. Passing a strip mall containing four businesses, including the Shamrock Inn, a beauty parlor, a Master Pizza and Mentor TV, Patrolman Heramb noticed a man dressed in dark clothing standing in front of the pizza parlor. The patrolman testified this man (later identified as Mr. Bekesz), watched him intently as his cruiser passed. Suspicious, Patrolman Heramb turned his cruiser around, returned to a plaza opposite where he had spotted Mr. Bekesz, parked, and watched.
 {¶ 5} The patrolman observed Mr. Bekesz pacing for ten to fifteen minutes in front of the Master Pizza and beauty parlor. Patrolman Heramb then saw Mr. Bekesz pass eastwards to the front of Mentor TV, where he looked through the front window, before going to the front door. Mentor TV appeared dark; the patrolman did not see any televisions or other merchandise turned on. *Page 3 
 {¶ 6} Patrolman Heramb saw Mr. Bekesz pull on the front door. When that did not open, Mr. Bekesz continued walking east along the front of Mentor TV; stopped again to look through the store window; then scanned Mentor Avenue. Upon reaching the northeast corner of the building, Mr. Bekesz took another look around, then turned the corner. Patrolman Heramb lost sight of Mr. Bekesz as the latter stepped between two Mentor TV service vans, before spotting him again, trying to open a side door to the store. When this failed, Patrolman Heramb observed Mr. Bekesz head toward the back of the store. Suspecting an attempted break-in, the patrolman radioed for back-up.
 {¶ 7} The patrolman drove to the back of Mentor TV with his lights off, and spotted Mr. Bekesz standing at the rear door. Turning on his floodlight, the patrolman saw a shiny metallic object in Mr. Bekesz's hand. Mr. Bekesz was holding the metallic object near some wires, while pulling on the door. The patrolman identified himself as a police officer, and ordered Mr. Bekesz to the ground. Mr. Bekesz did not comply, despite repeated orders from Patrolman Heramb, who eventually had to subdue and handcuff Mr. Bekesz. Prior to doing this, the patrolman saw Mr. Bekesz remove his gloves, and put them and the metallic object in his pocket. A search of Mr. Bekesz's pockets revealed the gloves; a tobacco pouch; a spool of speaker wire; and a utility knife. Black and green wires at the rear entrance to Mentor TV were cut.
 {¶ 8} After mirandizing Mr. Bekesz, Patrolman Heramb questioned him. Mr. Bekesz explained he had been at the Shamrock Inn that evening, and was waiting to be picked up by a friend, Ms. Barbara Fleck. Patrolman Heramb had not noticed pedestrians other than Mr. Bekesz in the area; and, a check of vehicle registrations for cars parked nearby did not reveal any registered to such a woman. *Page 4 
 {¶ 9} During the day following Mr. Bekesz's arrest, an employee of Mentor TV found a pair of lineman pliers on a snow bank in the rear parking lot. These were turned over to police.
 {¶ 10} Employees of the Lake County Crime Lab analyzed various items associated with the incident. Mr. Mitch Wisniewski determined no fingerprints could be recovered from the lineman pliers, and testified this was not unusual, given the damp, cold weather, and the possibility the pliers were used by someone wearing gloves. Mr. David Green analyzed the knife found on Mr. Bekesz, the pliers, and the cut wires from Mentor TV. He determined the utility knife had not been used to cut the wires, which had been cut by a pinching tool — such as pliers. He also determined the lineman pliers found at the scene were too rusted to close entirely, and thus, could not establish whether these pliers were used to cut the wires at Mentor TV. Finally, he determined there were two polymers on the pliers. One was clear, and matched neither of the cut wires. A second, black polymer was similar to polymers in the wire from Mentor TV, and could not be excluded.
 {¶ 11} Mr. Jack Tompkins, the owner of Mentor TV, testified that some of his merchandise retails for more than five hundred dollars. He testified that televisions displayed in the front window are turned off at closing time; and, that he does not invite the public onto his premises after closing. He testified that neither his side nor rear entrances are open to the public.
 {¶ 12} March 14, 2006, the jury returned its verdict, finding Mr. Bekesz guilty of breaking and entering, and not guilty on the remaining charges. March 17, 2006, the trial court entered the verdict as a judgment. It deferred sentencing pending completion *Page 5 
of a pre-sentence investigation and drug and alcohol evaluation. On April 12, 2006, the trial court held a sentencing hearing. By a judgment entry filed April 19, 2006, it sentenced Mr. Bekesz to a twelve month term of imprisonment, less one hundred ten days credit for time served. The trial court further notified Mr. Bekesz that he was potentially subject to post-release control, and ordered him to pay court costs, costs of prosecution, and supervision fees. Mr. Bekesz timely noticed this appeal, assigning four errors:
 {¶ 13} "[1.] The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 14} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 15} "[3.] The trial court erred to the prejudice of the defendant-appellant when it did not question or excuse a juror who witnessed the defendant being escorted away in handcuffs.
 {¶ 16} "[4.] The trial court erred to the prejudice of the defendant-appellant when a prospective juror professed personal and negative knowledge about the defendant in the hearing of other jurors."
 {¶ 17} By his first and second assignments of error, Mr. Bekesz challenges the trial court's denial of his Crim.R. 29(A) motion, and the manifest weight of the evidence used to convict him. A Crim.R. 29(A) motion questions the sufficiency of the evidence, whether the state has introduced evidence on each element of a crime sufficient to prove guilt beyond a reasonable doubt. State v. Patrick, 11th Dist. Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, at ¶ 18. A finding of sufficiency being required to *Page 6 
submit a case to the jury, determination that the conviction is supported by the weight of the evidence is also dispositive of its sufficiency. State v. Thomas, 9th Dist. Nos. 22990 and 22991,2006-Ohio-4241, at ¶ 6. Mr. Bekesz raises the same arguments in support of each of these assignments of error. Consequently, we consider the assignments together, under the manifest weight standard.
 {¶ 18} Mr. Bekesz notes that in order to prove breaking and entering, the state was required to show two elements: (1) that he trespassed; and (2), that he did so with intent to commit a felony. R.C. 2911.13(B). He maintains the state cannot show either. Regarding the first element, he cites to authority that he was privileged to enter Mentor TV's premises, or was a licensee, since Mentor TV holds itself open to the public, and he looked in the front display window. See, e.g., State v.Barksdale (1983), 2 Ohio St.3d 126 (privilege to enter car dealer's lot is not lost simply because a person intends to commit a felony, rather than purchase a car); Bennett v. Kroger (1996), 109 Ohio App.3d 727, 729
(person in parking lot after closing is a licensee). On the second element, he argues that, even if he intended to steal something from Mentor TV, there is no proof he intended to steal anything of sufficient value to make his crime felony breaking and entering.
 {¶ 19} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered.State v. Martin *Page 7 
(1983), 20 Ohio App.3d 172, 175; see, also, State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 {¶ 20} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 21} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v.Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at 8. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 22} Application of the foregoing principles to Mr. Bekesz's predicament indicates the trial court's judgment was not against the manifest weight of the evidence. First, the authorities relied on by him to establish privilege, or status as a licensee, are distinguishable. InBarksdale, the Supreme Court of Ohio determined the intent to commit a felony did not transform a privilege to enter a lot open to the public for *Page 8 
inspection of used cars into a trespass. Id. at 127. In this case, the owner of Mentor TV, Mr. Tompkins, testified he did not invite the public onto the premises at 1:00 a.m., and never invited the public to use his side and rear entrances. The jury was free to credit this testimony. Cf.Awan at 123.
 {¶ 23} Similarly, in Bennett, the First Appellate District determined that a person in a parking lot of a store which had closed within the hour was a licensee. Id. at 728-729. Here, Mr. Bekesz was actually arrested in a parking lot evidently shared by Mentor TV and the Shamrock Inn — and thus, might be considered a licensee of the Shamrock. But Patrolman Heramb testified that Mr. Bekesz had tried to open the front and side doors of Mentor TV — and was doing the same to the rear door at the time of his arrest. The jury was free to credit this testimony of the patrolman's. The testimony of Mr. Tompkins clearly established that he neither permitted nor acquiesced in this activity by Mr. Bekesz, which is sufficient to defeat his claim to be a licensee. Cf. Id. at 729.
 {¶ 24} Consequently, we find no error in the determination that Mr. Bekesz was a trespasser at Mentor TV on Christmas Eve, 2005. We further find no error in the determination that Mr. Bekesz intended to steal something of sufficient value to render his crime breaking and entering. The jury had the opportunity to see Mr. Bekesz in court, and was free to conclude he is a gentleman of sufficient enterprise to not risk an arrest for a misdemeanor, when opportunities for felony exist.
 {¶ 25} The judgment of the trial court was not against the manifest weight of the evidence. Thus, the evidence was sufficient to sustain the conviction. The first and second assignments of error are without merit. *Page 9 
 {¶ 26} By his third assignment of error, Mr. Bekesz challenges the trial court's failure to question or excuse a juror. The assignment is exemplified in the following colloquy between defense counsel and the trial court.
 {¶ 27} "[Defense Counsel]: Judge, before we get back into the instructions portion of things I think I do have to put on the record just I know that my client was uncomfortable with the fact that when we left for lunch one of the jurors came out of the bathroom and did see him being escorted down the hall in handcuffs by the two deputies. She's in the back row it was and I probably should have mentioned something sooner but I tried to stand in front of him and I just don't know if there is something that can be done differently in terms of holding the jurors and letting them take the people who are in custody in this particular room because their holding cell there seems to be a big problem with it.
 {¶ 28} "I believe it was Ms. Dallas, she's in the back row and she did come out of the bathroom. I know they had kind of looked down the hallway to make sure everybody had left but she was apparently in the bathroom.
 {¶ 29} "[The Trial Court]: Well that's the problem, I don't know how we are going to, we're not going to keep them here at lunch time because he has to eat too so he's got to go back to the jail.
 {¶ 30} "[Defense Counsel]: No, but if he could leave first then he would be gone and then if the jurors left after that that's a potential way to do it.
 {¶ 31} "[The Trial Court]: Well, I can instruct the bailiff make the deputies take the defendant out of here and they stay in the room. *Page 10 
 {¶ 32} "[Defense Counsel]: If they kind of got held in the room. This morning they brought him in also and I know he wasn't handcuffed but I think that's the easier way to do that type of situation. That's why I asked for him to be brought over earlier this morning he could have sat in the room, in the courtroom before the jurors came in I mean.
 {¶ 33} "[The Trial Court]: Well, see so much of this we don't have any control. We can tell the sheriff have them here by such and such a time but I have no control over the sheriff to actually get him here at any particular time and when they show up with him they show up with him.
 {¶ 34} "[Defense Counsel]: Well today he was here before 8:00, I know that and I'm not trying to kind of place blame on anybody but today's situation particularly Jeff seemed to be kind of helter-skelter with the whole thing.
 {¶ 35} "[The Trial Court]: That's another problem but that is also a problem that is constraints we have here with this whole courthouse, we don't have the facilities to make sure that anything doesn't happen like, you know, we can't check all the lavatories to determine who's in the lavatory before we have them take out the defendant.
 {¶ 36} "[Defense counsel]: Right."
 {¶ 37} The general rule is that a defendant's right to a fair trial is not prejudiced when a juror's view of a defendant handcuffed or shackled "* * * is brief, inadvertent and outside of the courtroom." State v.Kidder (1987), 32 Ohio St.3d 279, 286. Further, while a trial court's grant or denial of a mistrial in criminal proceedings generally is reviewed for abuse of discretion, cf. State v. Green, 11th Dist. No. 2003-A-0111, 2005-Ohio-6715, at ¶ 44, in this case defense counsel made no such motion. Thus, we may *Page 11 
only review for plain error. State v. James (Feb. 19, 1999), 2d Dist. No. 98-CA-54, 1999 Ohio App. LEXIS 506, at 10. "In order to constitute plain error, it must be obvious and have a substantial impact on the integrity of and the public confidence in the judicial proceedings." Id.
 {¶ 38} In this case, there is nothing to indicate abuse of discretion, let alone plain error, in the trial court's failure to question or dismiss the juror who may have seen Mr. Bekesz handcuffed, since the incident occurred outside the courtroom, and was fleeting.Kidder at 286.
 {¶ 39} The third assignment of error is without merit.
 {¶ 40} By his fourth assignment of error, Mr. Bekesz challenges the trial court's failure to grant a mistrial, based on the alleged tainting of the jury pool due to a comment by prospective juror Gavelda. During jury selection, Mr. Gavelda indicated he knew Mr. Bekesz from many years previous. The prosecutor requested Mr. Gavelda relate, without specifying, whether his feelings regarding Mr. Bekesz were strongly positive or negative. Mr. Gavelda responded: "[y]eah, I think it would be a real bad idea for me, to put me on the jury because I've known him." Mr. Bekesz argues this comment by Mr. Gavelda, in front of the jury pool, tainted it.
 {¶ 41} We disagree. Following Mr. Gavelda's comment, the trial court immediately adjourned to chambers; voir dired him; determined that Mr. Gavelda did have a negative attitude toward Mr. Bekesz; and, ultimately, excused him. Mr. Bekesz's counsel moved for mistrial. The trial court refused; and, upon reconvening the jury panel, voir dired its members regarding whether they were prejudiced against Mr. Bekesz due to Mr. Gavelda's comment. All agreed they were not. *Page 12 
 {¶ 42} An appellate court reviews a trial court's decision whether to dismiss an entire jury panel for abuse of discretion. London v.Scurry (July 22, 1996), 12th Dist. No. CA95-10-033, 1996 Ohio App. LEXIS 3120, at 5. As the Scurry court held: "[a] party challenging a jury panel has the burden of showing that the jurors were either unlawfully empaneled or that the jurors cannot be fair and impartial. * * * Mere speculation as to bias among the pool of prospective jurors will not justify quashing the entire venire. * * *" Id. (Citations omitted.) In this case, the learned and veteran trial judge did exactly what the law requires: he voir dired the jury, to determine prejudice. Finding none, he continued empanelling the petit jury. Mr. Bekesz points to nothing in the record indicating the jury panel was dishonest with the trial court, and thus, fails to meet his burden of showing the jury was not fair and impartial. Scurry at 5.
 {¶ 43} The fourth assignment of error is without merit.
 {¶ 44} The judgment of the Lake County Court of Common Pleas is affirmed.
MARY JANE TRAPP, J.,
GENE DONOFRIO, J.,
 Seventh Appellate District, sitting by assignment, concur. *Page 1