OPINION
{¶ 1} Defendant-appellant, Gary Jones, appeals his conviction in the Butler County Court of Common Pleas on one third-degree felony count of passing bad checks. We affirm.
 {¶ 2} In December 2005, appellant began looking at homes in Butler County, Ohio, in contemplation of relocating to the area from Chicago. In the process, appellant met the owner of a home remodeling business, Chris Cavens, who directed appellant to a community called "Treillage" with homes priced in the $600,000 to $700,000 range. Chris Cavens met *Page 2 
with appellant at the Treillage subdivision and showed him a home constructed by Oxford Construction, LLC, a home construction company owned by Chris Cavens' father, Leonard Cavens. Appellant expressed interest in the home, as well as in the home located on a neighboring lot.
 {¶ 3} Appellant subsequently signed purchase contracts for both properties, and requested that Chris Cavens make certain renovations to the homes prior to closing. Pursuant to the terms of the contracts, appellant provided the Cavenses with two nonrefundable $50,000 checks. In doing so, appellant requested the Cavenses to wait a day to deposit the checks to ensure that a recent deposit had cleared his account. In accordance with appellant's request, the checks were deposited on January 12, 2006, and Chris Cavens began working on remodeling the homes pursuant to appellant's specifications.
 {¶ 4} Shortly after the checks had been deposited and remodeling work had begun on the homes, Leonard Cavens was notified that appellant's checks had been dishonored for insufficient funds. The Cavenses thereafter contacted appellant to inquire about the matter, and appellant assured them the checks would be honored. Chris Cavens therefore continued with the remodeling work, spending approximately $32,000 and nearly completing the project.
 {¶ 5} The Cavenses continued contacting appellant regarding the unpaid checks into March and April 2006, and Leonard Cavens ultimately sent appellant a certified letter demanding that he honor the two checks. The account on which the checks were drawn was closed on January 25, 2006, and the checks were never honored. Accordingly, appellant was charged with two counts of passing bad checks, in violation of R.C. 2913.11, one of which the state dismissed prior to trial. Following a jury trial on September 1, 2006, appellant was found guilty of passing bad checks, and was subsequently sentenced to one year in prison, fined $2,000, and ordered to pay restitution in the sum of $32,845. *Page 3 
 {¶ 6} Appellant now appeals his conviction, advancing three assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE INADMISSIBLE CHARACTER EVIDENCE TO PROVE THAT [APPELLANT] ACTED IN CONFORMITY WITH SUCH CHARACTER."
 {¶ 9} In his first assignment of error, appellant argues the trial court violated Evid.R. 404(B) by admitting evidence of appellant's dealings with a home decorating company and a motorcycle shop to prove appellant was a "con man" who attempted to con the Cavenses. Specifically, appellant claims the trial court should have excluded evidence of other instances when he wrote bad checks to such other entities. We disagree.
 {¶ 10} The admissibility of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. State v. Martin (1985), 19 Ohio St.3d 122,129. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Wolons (1989), 44 Ohio St.3d 64,68.
 {¶ 11} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show" that the person acted in conformity therewith on a particular occasion. Evid.R. 404(B);State v. Walker, Butler App. No. CA2006-04-085, 2007-Ohio-911, ¶ 11, citing State v. Curry (1975), 43 Ohio St.2d 66, 68-69. Such evidence, however, may be admitted to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B); Walker; State v. Conway, 109 Ohio St.3d 412,2006-Ohio-2815, ¶ 64; State v. Bethel, 110 Ohio St.3d 416,2006-Ohio-4853, ¶ 174; State v. Crutchfield, Warren App. No. CA2005-11-121, 2006-Ohio-6549, ¶ 34.
 {¶ 12} Here, appellant was convicted of passing bad checks in violation of R.C. *Page 4 2913.11, which provides: "[n]o person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored." A person who issues a check "is presumed to know that it will be dishonored if * * * [t]he check * * * was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer * * * is not discharged by payment or satisfaction within ten days after receiving notice of dishonor." R.C. 2913.11(C)(2).
 {¶ 13} "Defraud" means "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B). "Deception" is defined as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).
 {¶ 14} Carol Grubb testified at trial that she provided appellant with home decorating services, and that she and her assistant spent an extensive amount of time working on appellant's design project. She testified that approximately two days prior to appellant's tender of the $50,000 checks to the Cavenses, appellant wrote her a check in the sum of $25,000, from the same account, as a deposit for custom home furnishings he had ordered. The check was dated January 9, 2006 and was signed by appellant. Grubb testified that appellant made no request that she wait any period of time before cashing said check, and as such, that she deposited the check the next day, January 10, 2006. She testified that approximately one week later, on or about January 17, 2006, she received notice that appellant's check had not cleared, and ultimately received the check back with "insufficient funds" printed on it. Grubb indicated that despite multiple communications with appellant, the *Page 5 
check has never "been made good."
 {¶ 15} David Reagan, the business manager of a Harley-Davidson motorcycle dealership, also testified at trial regarding his receipt of bad checks from appellant. Reagan testified that in March 2006, appellant visited the dealership and agreed to purchase two custom motorcycles. Reagan indicated that appellant wrote two checks for the subject motorcycles, one in the sum of $40,300.07 and the other in the sum of $34,449.23. The following week, Reagan discovered that there were insufficient funds in the account on which the checks were drawn to cover the checks. Reagan testified that after several communications with appellant, the checks were never able to clear.
 {¶ 16} Appellant, however, maintained throughout the trial that he did not intend to defraud the Cavenses at the time he tendered the checks in question, because he expected to receive a deposit that would have covered such checks. Nevertheless, appellant admitted on cross-examination that he did not have the money in his account at the time the checks were written. In addition, the state presented evidence that appellant's account on which the checks to the Cavenses and to Carol Grubb were drawn never had more than a $1,000 balance since the time the account had been opened, and that the checks in question were never paid after appellant received notice they had been dishonored.
 {¶ 17} Despite appellant's contention to the contrary, evidence of appellant's dealings with Carol Grubb and David Reagan was not inadmissible character evidence under Evid.R. 404(B), as it was not used to prove appellant acted in conformity with such character. Rather, the trial court found, and we agree, that the foregoing testimony was admissible to prove appellant's intent, knowledge, plan, or absence of mistake or accident in writing the checks in question, which he lacked sufficient funds to cover. As a result, we find the trial court did not abuse its discretion in admitting the subject evidence. Appellant's first assignment of error is therefore overruled. *Page 6 
 {¶ 18} Assignment of Error No. 2:
 {¶ 19} "THE PROSECUTOR MADE NUMEROUS IMPROPER COMMENTS DURING THE COURSE OF THE TRIAL, WHICH CONSTITUTE PLAIN ERROR, AND WHICH DEPRIVED [APPELLANT] OF HIS RIGHT TO A FAIR TRIAL."
 {¶ 20} In his second assignment of error, appellant argues the state committed prosecutorial misconduct in referring to appellant as a "con man" and "liar" in its closing argument, and in questioning appellant on cross-examination regarding his refusal to waive his speedy trial right. We disagree.
 {¶ 21} In determining whether a prosecutor's remarks constitute misconduct, a court must consider "(1) whether the remarks were improper; and, if so, (2) whether the remarks prejudicially affected a defendant's substantial rights." State v. Trewartha, Franklin App. Nos. 05AP-513, 05AP-514, 2006-Ohio-5040, ¶ 15, citing State v. Noling,98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 91. "To demonstrate prejudice, a defendant must show that the improper remarks or questions were so prejudicial that the outcome of the trial would clearly have been otherwise had they not occurred." Id., citing State v. Campbell,69 Ohio St.3d 38, 51, 1994-Ohio-492.
 {¶ 22} It is well-established that a degree of latitude is granted to both parties in closing argument. State v. Baldev, Butler App. No. CA2004-05-106, 2005-Ohio-2369, ¶ 19, citing State v. Smith (1984),14 Ohio St.3d 13. Accordingly, "[t]he closing argument * * * must be reviewed in its entirety to determine if the prosecutor's remarks were prejudicial." State v. Byrd (1987), 32 Ohio St.3d 79, 82.
 {¶ 23} This court has previously determined that it is improper for a prosecutor to express his personal belief or opinion as to the credibility of a witness or the guilt of the accused, or to state the defendant is a liar or that he believes the defendant is lying.Baldev at ¶ 20, citing State v. Rahman (1986), 23 Ohio St. 3d 146, 154
(finding that the state's *Page 7 
comments were improper, but not plain error, where appellant was labeled a "hypocrite" and "the biggest liar that's taken the stand in a long time"). Nevertheless, "[i]n those instances where personal opinions of guilt are predicated upon the evidence, though frowned upon, they are not deemed to be prejudicially erroneous." State v. Stephens (1970),24 Ohio St.2d 76, 83.
 {¶ 24} As an initial matter, we note defense counsel did not object at trial to the prosecutor's references to appellant during closing argument as a "con man" and a "liar." "`A claim of error in a criminal case [cannot] be predicated upon the improper remarks of counsel during his argument at trial, which were not objected to, unless such remarks serve to deny the defendant a fair trial.'" State v. Landrum (1990),53 Ohio St.3d 107, 111, quoting State v. Wade (1978), 53 Ohio St.2d 182, paragraph one of the syllabus. See, also, Crim.R. 52(B). "`Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Landrum, quoting State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 25} The state commenced its closing argument by commenting on why appellant was "living a life that his wallet would not measure up to," stating, "I can't explain to you why somebody would do that. Why do people molest small children? I don't know. I can't explain that to you." The state then addressed appellant's claim that he was waiting for a wire transfer to come through for a commission he was owed, which had not been received as of the date of trial. In doing so, the state commented, "[i]t's not coming. Why is it not coming? It's a lie. It's a con." The state continued to surmise why appellant would attempt to purchase items he could not afford by stating, "[h]is ego. To see if I could find a sucker — is it to see if somebody would let me drive the motorcycle off the lot on Saturday when I know the check is no good so I can keep it for a while? Is it the fun and the manipulation? I don't know." With respect to $32,000 Chris Cavens incurred in renovating the homes pursuant to *Page 8 
appellant's request, the state commented, "[d]oes he get some satisfaction out of that manipulation? Maybe so."
 {¶ 26} The state also made reference to the motivation behind appellant's actions in addressing whether appellant benefited from writing the checks in question, stating, "[d]oes he enjoy going around and representing himself as a millionaire who could afford to buy these homes and buy these motorcycles and buy this furniture * * * probably. Probably makes him feel good, probably boosts his ego. But whether or not we fully * * * understand * * * why he would do it as a benefit to him, we know that these people were hurt by his actions. There was a detriment to them." The state concluded its remarks by stating, "[h]e's a con man, ladies and gentlemen. Don't let him con you."
 {¶ 27} While the state's comments were arguably improper, we cannot say appellant was prejudiced by such remarks, such that the outcome of the trial would clearly have been otherwise had they not occurred, in light of the evidence presented at trial. Evidence was presented that appellant wrote checks in large sums, not only to the Cavenses, but to other businesses as well. Evidence was also presented that appellant's account on which the checks to the Cavenses were drawn never had more than a $1,000 balance since the account had been opened. Moreover, appellant testified that he did not have sufficient funds in his account to cover the checks at the time he tendered the checks to the Cavenses, and that the checks were never paid after he was notified they had been dishonored. In light of such evidence, we find the state's remarks did not result in an unfair trial, and therefore, do not constitute plain error.
 {¶ 28} Appellant also contends the state committed misconduct by questioning him regarding his refusal to waive his speedy trial right after he indicated that he hadn't had time to subpoena witnesses to testify regarding the alleged wire transfer he was expecting in January 2006. When the state asked appellant whose choice it was to go to trial on the date *Page 9 
in question, appellant responded, "[i]t was the State of Ohio." Thereafter, the state requested, and the trial court provided, an instruction to the jury that appellant had been present at a pretrial conference earlier in the week, "had the opportunity to delay the trial * * *, refused to sign the time waiver and demanded that the trial be held before tomorrow."
 {¶ 29} After a thorough review of the record and in light of the evidence previously discussed, we cannot find the foregoing comments prejudiced appellant such that an unfair trial resulted, notwithstanding the fact such comments may have been improper. See Landrum,53 Ohio St.3d at 111, 112, fn. 1. We also find it noteworthy that appellant, himself, invited such remarks with his comment that he was not permitted enough time to subpoena witnesses.
 {¶ 30} Based upon the foregoing, we find no merit to appellant's contention that the alleged prosecutorial misconduct committed by the state resulted in an unfair trial. Appellant's second assignment of error is therefore overruled.
 {¶ 31} Assignment of Error No. 3:
 {¶ 32} "THE TRIAL COURT ERRED IN CONVICTING [APPELLANT] OF PASSING BAD CHECKS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 33} In his final assignment of error, appellant argues his conviction for passing bad checks is against the manifest weight of the evidence. We disagree.
 {¶ 34} In determining whether a conviction is against the weight of the evidence, an appellate court reviews the record as a "thirteenth juror." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in *Page 10 
which the evidence weighs heavily against the conviction." Id. In so analyzing, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 35} Appellant was convicted of passing bad checks in violation of R.C. 2913.11 (B), which provides, "[n]o person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored." A person who issues a check "is presumed to know that it will be dishonored if * * * [t]he check * * * was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer * * * is not discharged by payment or satisfaction within ten days after receiving notice of dishonor." R.C. 2913.11(C)(2).
 {¶ 36} "Defraud" means "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B). "Deception" is defined as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A). "Intent is a question of fact and not of law, to be determined from all the facts and circumstances as shown by the evidence." State v.Wamsley, Butler App. No. CA2002-05-109, 2003-Ohio-1872, ¶ 18. (Internal citations omitted.)
 {¶ 37} Appellant first contends that the state failed to prove he intended to defraud the Cavenses because he told the Cavenses to wait a day before depositing the checks so that funds would be available to cover the checks. Appellant contends the Cavenses were aware, *Page 11 
therefore, that the checks were not collectible at the time such checks were delivered to them. Unlike the fact scenarios in the cases appellant cites in support of this contention, however, there is no evidence to suggest the Cavenses knew of appellant's financial condition prior to presenting the checks for payment. See, e.g., State v. Edwards (2001),141 Ohio App.3d 388, 395-396. Rather, the record indicates that appellant informed the Cavenses he was expecting a wire transfer, requested the Cavenses to wait one day before depositing the checks to ensure the transfer had cleared his account, and that the Cavenses complied with appellant's request. There is nothing in the record to suggest the Cavenses were notified before depositing the check that the alleged deposit appellant was expecting had not cleared, or that appellant did not have the funds to cover the two $50,000 checks.
 {¶ 38} Moreover, the state presented evidence that appellant's account, on which the two $50,000 checks were drawn, never had more than a $1,000 balance since the account had been opened. Appellant himself testified that he did not have sufficient money in his account to cover the checks at the time he tendered the checks to the Cavenses. The state presented evidence that appellant wrote the checks at issue after he had written a $25,000 check for home furnishings out of the same account. Although the account was closed by the bank in January 2006 for fraudulent activity, the record indicates that appellant continued to give assurances to the Cavenses that the checks would be honored, and Chris Cavens therefore continued working on the homes. The jury was permitted to believe such evidence, rather than the testimony of appellant that he was expecting a large commission that would have covered the two $50,000 checks, in concluding appellant intended to defraud the Cavenses. See In re C.B., Butler App. No. CA2006-06-139,2007-Ohio-3347, ¶ 10; State v. Bekesz, Lake App. No. 2006-L-091,2007-Ohio-2573, ¶ 21; DeHass, 10 Ohio St.2d at paragraph one of the syllabus. Accordingly, we find appellant's argument as to this issue without merit. *Page 12 
 {¶ 39} Appellant also argues the state failed to prove he knew the two checks would be dishonored. As previously noted, R.C. 2913.11(C) provides that "a person who issues or transfers a check or other negotiable instrument is presumed to know that it will be dishonored if * * * [t]he check or other negotiable instrument was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, or any party who may be liable thereon is not discharged by payment or satisfaction within ten days after receiving notice of dishonor."
 {¶ 40} Appellant testified that he did not have sufficient funds in his account to cover the two $50,000 checks at the time he tendered such checks to the Cavenses. Appellant also testified that he was contacted by Chris Cavens who informed him that the checks had not been honored, that he contacted his bank to verify this information, and that he knew the checks had been returned. The state specifically asked appellant, "I'm talking about Ms. Grubb and Len and Chris Cavens, * * * [w]ithin 10 days of them making — putting you on notice that the checks were not good, did you ever make the checks good?" Appellant responded, "No, I didn't."
 {¶ 41} The state also presented evidence that the account on which the checks were drawn never had greater than a $1,000 balance, and that the alleged wire transfer appellant was expecting, which he claimed would have covered the two $50,000 checks in their entirety, was never made. Our review of the record indicates that appellant offered no evidence to overcome the statutory presumption that he knew the checks would be dishonored, other than his own testimony. The jury was in a better position to judge the credibility of the witnesses and evidence presented at trial, and to resolve any inconsistencies or conflicts therein accordingly. See Bekesz; DeHass.
 {¶ 42} Upon a thorough review of the record, and based upon the foregoing, we find *Page 13 
appellant's conviction for passing bad checks is not against the manifest weight of the evidence. Appellant's third assignment of error is therefore overruled.
 {¶ 43} Judgment affirmed.
 YOUNG, P.J. and BRESSLER, J., concur. *Page 1