OPINION
{¶ 1} Defendant-appellant and cross-appellee, Darryn Pringle, appeals his conviction in the Butler County Court of Common Pleas on one count of rape, two counts of felonious assault, two counts of domestic violence, and one count of violating *Page 2 
a protection order. We affirm the decision of the trial court.
 {¶ 2} The two-year relationship between appellant and CD., from which they have a child, consists of numerous incidents of physical and psychological abuse. Their tumultuous relationship culminated with appellant's arrest and conviction for the events that occurred between January 20 and January 23, 2007, which are subject to this appeal.
 {¶ 3} The jury heard testimony indicating the following:
 {¶ 4} On the evening of January 20, 2007, appellant came into the couple's bedroom and asked CD if she had been to his brother's girlfriend's house. When she replied that she had, appellant grabbed her by the hair and threw her on the bed. Appellant then asked her who she was visiting, and whether she ever had another man in appellant's car. CD. admitted that she had another man in the car sometime during the month of December. In response, appellant became angry and "backhanded" her off of the bed, sending her to the floor where he continued his attack by punching her and sitting on her head.[1] Throughout the attack, CD. laid motionless fearing that any attempt to fight back would only make matters worse.
 {¶ 5} Once the beating ceased, she was left with a multitude of bruises on her side, hip, legs, arms, chest, face and neck, which made it painful for her to move. Appellant later apologized, and said it would never happen again.
 {¶ 6} On January 22, just two days later, appellant took CD. to his mother's house. During their visit, appellant confronted CD. about a rumor that she had another man's head in her lap. Appellant threatened CD. that he would "break [her] face" with *Page 3 
his shoe if she did not tell the truth. Appellant's mother intervened before he could carry out his threat.
 {¶ 7} Later that night, and in the early morning hours of January 23, appellant woke CD. up and asked her if she ever had a sexual relationship with his brother. Appellant *Page 4 
continued to question CD. in the living room, where she became so nervous that she vomited. Initially, CD. denied having a sexual relationship with appellant's brother. In response to C.D.'s denial, appellant went to the kitchen, got a knife, and ordered her to take off all her clothes and bend over the couch. CD. reluctantly complied with appellant's demand. Appellant then threatened to "cut [her] insides out" if she did not tell him the truth. Appellant cut her leg and punched her in the mouth after she admitted to sleeping with his brother.
 {¶ 8} A short time later, appellant attempted to call his brother while CD. sat naked on the bed. When his brother did not answer, appellant laid the phone down, picked up a hair brush, and ordered CD. to lie back on the bed and open her legs. She refused. Appellant then forced her legs open with his hand, inserted the brush into her vagina, and stated "ain't nobody ever going to have this again." Appellant managed to insert the brush twice before his brother called, which prompted him to stop his attack.
 {¶ 9} Later that morning, CD. went to Mercy Fairfield Hospital to receive treatment for her injuries. However, CD. did not permit the hospital staff to conduct a pelvic exam because she did not want appellant to be looked at as a rapist, nor did she want to be known as a rape victim. Officer Ross Sherman, a police officer, was dispatched to the hospital to take pictures of CD. and to obtain her statement. CD. provided Officer Sherman with a statement implicating appellant.
 {¶ 10} On January 24, CD. met with Detective Jim Calhoun and provided him the same description of the attack she gave Officer Sherman at the hospital. That night, appellant sent CD. a text message apologizing, asking to work things out, claiming that he would never do it again, and that he would get help. *Page 5 
 {¶ 11} Sometime later, appellant's mother called CD. and told her that her son was facing possible rape charges. CD., not wanting appellant charged with rape, agreed to meet with a lawyer in Cincinnati in an attempt to get the rape charges dropped. After meeting with a lawyer, appellant convinced CD. to concoct a fictitious story about a "fat red-head" who attacked her and caused her injuries. Thereafter, CD. presented a signed affidavit and testified during the February 13, 2007 preliminary hearing that she was attacked by a "fat red-head." CD. provided the same fictitious story to the Grand Jury on March 1, 2007.
 {¶ 12} While in jail, appellant made several phone calls to CD. claiming that she would be charged with perjury if she did not stick with the fictitious story about the "fat red-head."[2] Appellant also wrote CD. a letter asking her to "get lost for a few days" when she was scheduled to testify. During C.D.'s direct examination, she admitted that the affidavit and the testimony she provided under oath were false and made in an effort to protect appellant.[3]
 {¶ 13} A Butler County jury found appellant guilty on all six charges. Appellant appeals his conviction, raising four assignments of error. The state of Ohio cross-appeals, raising one assignment of error.
 {¶ 14} Appellant's Assignment of Error No. 1:
 {¶ 15} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED [CD] TO TESTIFY ABOUT PRIOR ACTS CONTRA TO RULE OF EVIDENCE 404(B) *Page 6 
BECAUSE IT WAS NOT RELEVANT AND WAS UNFAIRLY PREJUDICIAL."
 {¶ 16} Appellant argues that the trial court erred when it permitted CD. to testify regarding appellant's other prior acts of violence under Evid. R. 404(B) because the evidence was highly prejudicial, had no probative value, and likely confused the jury on other issues. *Page 7 
These arguments lack merit.
 {¶ 17} The admissibility of relevant evidence rests within the sound discretion of the trial court. State v. Jones, Butler App. No. CA2006-11-298, 2008-Ohio-865, ¶ 10, citing State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion, as well as a showing that the appellant suffered material prejudice, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. State v. Martin (1985), 19 Ohio St.3d 122,129. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court.State v. Yeager, Summit App. No. 21510, 2005-Ohio-4932, ¶ 29.
 {¶ 18} Pursuant to Evid. R. 404(B), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Evid. R. 404(B);Jones at ¶ 11. However, "other acts evidence" may be admitted for other purposes, including to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See Evid. R. 404(B); Jones at ¶ 11, citing State v. Walker, Butler App. No. CA2006-04-085, 2007-Ohio-911.
 {¶ 19} Identity may be proven by other acts evidence when it "form[s] part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment," and is "inextricably related to the alleged criminal act." State v. Lowe, 69 Ohio St.3d 527,531, 1994-Ohio-345. Evidence of the defendant's physical *Page 8 
and psychological abuse upon the victim is "relevant and probative of a method of control used to force sex upon the victim" and is "inextricably related" to a charge of rape under R.C. 2907.02(A)(2) because it requires proof of force or threat of force. State v.Worrell, Franklin App. No. 04AP-410, 2005-Ohio-1521, ¶ 33, quotingState v. Madsen, Cuyahoga App. No. 82399, 2003-Ohio-5822, ¶ 27.
 {¶ 20} Appellant objected to the admissibility of C.D.'s testimony regarding numerous instances in which he engaged in physical acts of violence against her and her property.[4] The trial court determined that the identity of the perpetrator was at issue, [5] and the disputed "other acts evidence" was part of the immediate background to the crimes charged, which included, among other things, a charge of rape in violation of R.C. 2907.02(A)(2). As a result, the trial court concluded that the "other acts evidence" was relevant and admissible to prove identity.[6] We find no abuse in the trial court's decision. Accordingly, appellant's first assignment of error is overruled.
 {¶ 21} Appellant's Assignment of Error No. 2:
 {¶ 22} "THE JURY'S VERDICT CONVICTING MR. PRINGLE OF RAPE, FELONIOUS ASSAULT AND DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST *Page 9 
WEIGHT OF THE EVIDENCE WHEN THE SOLE WITNESS TO TESTIFY ABOUT THE INCIDENTS WAS A WITNESS WHO HAD, BY HER OWN ADMISSION, GIVEN FALSE TESTIMONY ON TWO SEPARATE OCCASIONS (sic)."
 {¶ 23} Appellant argues that his conviction for rape, felonious assault, and domestic violence, was against the manifest weight of the evidence because each of the required elements was not supported by credible testimony or evidence. We disagree.
 {¶ 24} An appellate court considering whether a conviction was against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. State v. Good, Butler App. No. CA2007-03-082,2008-Ohio-4502, ¶ 25, citing State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-160, ¶ 39. The question is whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.Good at ¶ 25.
 Rape: R.C. 2907.02(A)(2) {¶ 25} Appellant argues his conviction for rape, a first-degree felony, was against the manifest weight of the evidence and should be reversed because "the only witness who gave testimony that the sexual conduct was not consensual" was CD. who "had given multiple conflicting stories under oath, and who admitted on the stand that she did not believe that she had been raped * * *." This argument lacks merit.
 {¶ 26} Appellant was charged with rape in violation of R.C. 2907.02(A)(2), which *Page 10 
prohibits a person from engaging in sexual conduct with another "when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct," defined by R.C. 2907.01(A), includes "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another without privilege to do so."
 {¶ 27} Appellant claims his conviction of rape was not supported by the manifest weight of the evidence because C.D.'s testimony was not credible. To support this claim, appellant points to C.D.'s multiple conflicting stories that she had previously provided under oath. However, CD. admitted during her direct examination that she signed an affidavit containing a false story, and provided the false testimony in an effort to protect appellant.
 {¶ 28} While there may be a question as to C.D.'s credibility, we remind appellant that, "the weight to be given the evidence, and the credibility of witnesses are primarily for the trier of facts."Good at ¶ 31, quoting State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. As a result, we defer to the jury's decision to find C.D.'s testimony reliable because the jury was "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id., quoting Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 29} After reviewing the record, we cannot say that the jury clearly lost its way in finding C.D.'s testimony to be competent, credible, and reliable. Accordingly, we find no reason to disturb the finding of guilt with regard to the charge of rape as it was not against the manifest weight of the evidence. *Page 11 
 Felonious Assault: R.C. 2903.11(A)(1) and 2903.11(A)(2) {¶ 30} Appellant argues that his conviction on two counts felonious assault, both second-degree felonies, was against the manifest weight of the evidence and should be reversed. We disagree.
 R.C. 2903.11(A)(1) {¶ 31} Appellant argues that his conviction for felonious assault under R.C. 2903.11(A)(1) was against the manifest weight of the evidence because the state failed to prove that CD. suffered "serious physical injury."
 {¶ 32} R.C. 2903.11(A)(1) prohibits any person from knowingly causing "serious physical harm to another * * *." "Serious physical harm" is defined by R.C. 2901.01(A)(5) as:
 {¶ 33} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 34} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 35} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 36} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 37} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 38} Our review of the record indicates that CD. suffered extensive "serious physical harm" from the beating she sustained on January 20. After enduring another *Page 12 
attack by appellant on January 23, CD. went to Mercy Fairfield Hospital for treatment. Officer Sherman, a 17-year veteran with the Hamilton Police Department who met with CD. at the hospital, testified that he "was taken by surprise by her appearance," and that every part of her body was bruised, including her arms, face, and neck. Detective Calhoun, who met with CD. on January 24, stated that she was "severely bruised * * *" on her face and arms, and "* * * it looked like she had taken a beating." Pictures taken by Officer Sherman on January 23, and another female officer on January 24, depict numerous, large, dark colored bruises on her side, hip, back, chest, knees, legs, arms, and face.[7]
One exhibit depicts the right side of C.D.'s face nearly completely covered with dark purple bruises. CD. testified that it hurt to move after the attack, and that the bruises took several weeks to heal.
 {¶ 39} Based on the evidence presented, we cannot say that the jury clearly lost its way in finding CD. suffered "serious physical harm." Accordingly, appellant's conviction of *Page 13 
felonious assault in violation of R.C. 2903.11(A)(1) is not against the manifest weight of the evidence.
 R.C. 2903.11(A)(2) {¶ 40} Appellant argues that his conviction of felonious assault under R.C. 2903.11(A)(2) was against the manifest weight of the evidence because the state failed to prove appellant "caused or attempted to cause `serious physical harm' with a deadly weapon." We disagree.
 {¶ 41} First, appellant argues that his conviction is against the manifest weight of the evidence because he did not cause, or attempt to cause, "serious physical harm." However, appellant is incorrect in his assertion that the state must show "serious physical harm" in order to be convicted of felonious assault under R.C. 2903.11(A)(2). Instead, felonious assault under R.C. 2903.11(A)(2), for which appellant was charged following the events of January 23, only requires "physical harm to another." Physical harm is defined under R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment regardless of its gravity or duration." In this case, appellant cut CD's leg with a knife which caused her to bleed. Clearly, a cut on the leg would be classified as an injury, and therefore, "physical harm" under R.C. 2901.01(A)(3).
 {¶ 42} Second, appellant argues that his conviction is against the manifest weight of the evidence because the knife used in the attack was not a "deadly weapon."[8] Our review of the record indicates that the knife used by appellant was a "deadly weapon."
 {¶ 43} "Deadly weapon" is defined under R.C. 2923.11(A) as "any instrument, device or thing capable of inflicting death, and designed or specially adapted for use as *Page 14 
a weapon, or *Page 15 
possessed, carried, or used as a weapon." Under Ohio law, a knife is not presumed to be a deadly weapon. State v. Perkins (May 13, 1996), Fayette App. No. CA95-08-020, at 7, citing City of Columbus v. Dawson (1986), 28 Ohio App.3d 45, 46. Instead, the prosecution must prove either (1) that the knife was designed or specifically adapted for use as a weapon, or (2) the defendant possessed, carried, or used the knife as a weapon.Perkins at 7.
 {¶ 44} In this case, appellant picked up a knife and threatened to "cut [C.D.'s] insides out" if she did not tell him the truth about her relationship with his brother. As a result, appellant used the knife as a weapon when he threatened CD. and he was aware it could inflict severe injury, and even death. See, e.g., State v. Schooler, Montgomery App. No. 19627, 2003-Ohio-6248 (affirming a finding that a knife was a deadly weapon because appellant's statements that he was going to kill the victim demonstrated his awareness that the knife used was capable of causing death). Therefore, the knife used by appellant was a "deadly weapon" as defined under R.C. 2923.11(A).
 {¶ 45} We cannot say that the jury clearly lost its way in finding CD. suffered from "physical harm" caused by a "deadly weapon." Accordingly, appellant's conviction of felonious assault in violation of R.C. 2903.11(A)(2) is not against the manifest weight of the evidence.
 Domestic Violence: R.C. 2919.25(A) {¶ 46} Appellant argues that his conviction for domestic violence under R.C. 2919.25(A) was against the manifest weight of the evidence. We disagree.
 {¶ 47} R.C. 2919.25(A) prohibits any person from knowingly causing, or *Page 16 
attempting to cause, "physical harm to a family or household member." Appellant does not provide any further support for his argument. Based on the evidence presented, which included testimony that the couple lived together, appellant's conviction was not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
 {¶ 48} Appellant's Assignment of Error No. 3:
 {¶ 49} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT INSTRUCTED THE JURY ON CONSCIOUSNESS OF GUILT IN THE MANNER IN WHICH IT DID BECAUSE IT HAD NO BASIS IN LAW OR IN THE FACTS PRESENTED AT THE TRIAL AND LIKELY LED TO THE JURY BEING CONFUSED AS TO THE SIGNIFICANCE OF THE LETTER THAT MR. PRINGLE ALLEGEDLY SENT TO THE WITNESS."
 {¶ 50} Appellant argues that the trial court erred in instructing the jury on consciousness of guilt as it "pertains to the letter that [appellant] allegedly sent to [C. D.]" because "there was no basis in the law or the facts of the case to allow the jury instruction" and it was highly prejudicial. We disagree.
 {¶ 51} Jury instructions must contain "all matters of law necessary for the information of the jury in giving its verdict." R.C. 2945.11. The trial court should instruct the jury if the proposed instruction is a correct statement of law, applicable to the facts in the case, and reasonable minds could reach the conclusion sought by the specific instruction. State v. Lawson (Apr. 30, 2001), Butler App. No. CA99-12-226, at 18, citing Murphy v. Carrolton Mfg. Co. (1991),61 Ohio St.3d 585, 591. An appellate court will review the trial court's decision to include a requested jury instruction based on an *Page 17 
abuse of discretion. Lawson at 18, citing State v. Wolons (1989),44 Ohio St.3d 64, 68.
 {¶ 52} Consciousness of guilt can be shown by specific evidence of witness intimidation and acts "designed to impede or prevent a witness from testifying." State v. Grimes, Hamilton App. No. C-030922, 2005-Ohio-203, ¶ 55, citing State v. Richey, 64 Ohio St.3d 353,1992-Ohio-44; State v. Conway, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 68.
 {¶ 53} In this case, a letter written by appellant containing statements indicating his attempts to dissuade CD. from testifying against him was introduced in evidence.[9] In response, the trial court included a jury instruction relating to consciousness of guilt.[10]
 {¶ 54} In Lawson, Butler App. No. CA99-12-226, this court determined that the trial court did not abuse its discretion by instructing the jury on the consciousness of guilt where the instructions were similar to the case at bar.[11] Accordingly, we find that the *Page 18 
trial court did not abuse its discretion by including the jury instruction on consciousness of guilt, and therefore, appellant's third assignment of error is overruled.
 {¶ 55} Appellant's Assignment of Error No. 4:
 {¶ 56} "THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING MR. PRINGLE TO A TOTAL SENTENCE OF EIGHTEEN YEARS AND SIX MONTHS BECAUSE THIS WAS MR. PRINGLE'S FIRST FELONY CONVICTION, THE EVIDENCE SUPPORTING *Page 19 
THE CONVICTION WAS SHAKY AT BEST AND THE COUNTS SHOULD HAVE [BEEN] MERGED FOR PURPOSES OF SENTENCING."
 {¶ 57} Appellant argues that the trial court abused its discretion in sentencing him "to the maximum sentences for each count and ordered that three of the counts run consecutively" because he had no prior felonies, he is a young father who can be rehabilitated, and C.D.'s injuries were "healed within about one week." This argument lacks merit.
 {¶ 58} "A trial court is given broad discretion when sentencing within the confines of statutory authority." State v. Buckley, Madison App. No. CA2005-05-020, 2006-Ohio-4322, ¶ 5, citing State v. Wright (1998), 126 Ohio App.3d 628, 632. An appellate court must find by clear and convincing evidence that the sentence is contrary to law or unsupported by the record to disturb the sentence. Buckley at ¶ 5.
 {¶ 59} Appellant failed to provide any legal authority to support his argument that the trial court abused its discretion. The arguments that he does assert; namely, that appellant is a young father "who can be rehabilitated," he had no prior felony convictions, [12] and the injuries he inflicted healed "within about one week," fail to demonstrate how the sentence imposed was contrary to law or unsupported by the record. Because appellant's sentence is within the basic range authorized by law, and the record indicates that the trial court considered the appropriate statutory guidelines, as well as the presentence investigation report and mitigating evidence, his fourth assignment of error is overruled. *Page 20 
 {¶ 60} The State's Cross-Assignment of Error No. 1: *Page 21 
 {¶ 61} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PREVENTED THE JURY FROM HEARING CONSCIOUSNESS OF GUILT EVIDENCE."
 {¶ 62} The state argues that the trial court erred in denying the admission of an audio recording that contained statements from appellant regarding the potential punishment he could serve if convicted. Specifically, the state argues that the audio recording was not being used to introduce evidence of a potential punishment, but instead, was being used to indicate consciousness of guilt, and was therefore, admissible. This argument lacks merit.
 {¶ 63} As stated previously, absent an abuse of discretion, as well as a showing that the appellant suffered material prejudice, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. Martin, 19 Ohio St.3d at 129. A jury should be instructed not to consider punishment when determining guilt. See R.C. 2945.11; see, also, State v. Moon (1931) 124 Ohio St. 465 (finding that the instruction found in R.C. 2945.11 is not mandatory). Evidence indicating potential punishment has been excluded by other courts even when its intended use was for other permissible purposes. See, e.g., State v.Gresham, Cuyahoga App. No. 81250, 2003-Ohio-744, ¶ 10 (affirming the trial court's exclusion of evidence indicating punishment because the potential that the jurors would improperly consider the available sentence in assessing appellant's guilt or innocence outweighed the marginal probative value in assessing the witnesses' bias).
 {¶ 64} In this case, the state attempted to play an audio recording that contained statements made by appellant referencing, although incorrectly, a potential punishment he could serve if convicted. The trial court determined that evidence of appellant's *Page 22 
potential punishment was inadmissible.[13] Here, because appellant was found guilty on all six charges, *Page 23 
the state has failed to demonstrate how it was prejudiced by the trial court's exclusion of the audio recording. Further, although we feel that the trial court should have provided the state with an opportunity to explain the intended use of the audio recording, this conduct does not amount to an abuse of discretion. See State v. Harris, Butler App. No. CA2007-11-280, 2008-Ohio-4504 (affirming trial court's denial of an evidentiary hearing because such a determination is within the discretion of the trial court). Accordingly, the state's cross-assignment of error is overruled.
 {¶ 65} Judgment affirmed.
WALSH, P.J. and BRESSLER, J., concur.
[1] Appellant sat on her head in an apparent attempt to smother her. Appellant also fired a barrage of insults during his attack by calling C.D. a slut, whore, and liar.
[2] These jailhouse conversations were recorded and played to CD. prior to her testimony in this case.
[3] Specifically, CD. stated that she realized she was caught in a lie and that "it [was] pointless to keep going on in a lie when [she] was recorded on a phone call saying that [appellant] did it and he beat [her] up * * *."
[4] Appellant's violent outbursts and physical attacks often occurred after learning CD. had been in contact with other men. For instance, CD. testified that: appellant threw her cell phone against the wall, breaking it, after he found another man's phone number on her phone; appellant punched her twice in the face after he found that same man's phone number, and text messages, as well as appellant's other violent threats and name calling. She also testified that appellant kicked in her driver side window while her infant son sat in the back seat after he found her talking to the mother of appellant's other children. Appellant apologized, and was forgiven, after each violent outburst.
[5] The trial court noted that "this is an identity case not a consent case * * *" and that the "question for the jury is the identity of the perpetrator of the violence." Identity, as the trial court found, became an issue after CD. signed an affidavit, and provided testimony during the preliminary hearing and to a grand jury, that she was beaten up by a "fat red-head[ed]" woman.
[6] We also note that, because appellant became violent whenever he suspected CD. of infidelity, the "other acts evidence" was also admissible to show appellant's intent, and absence of mistake or accident. See Evid. R. 404(B).
[7] Officer Sherman testified that although accurate, "these pictures don't do it justice." He continued by stating that "[s]he looked much worse than the pictures."
[8] Appellant also claims that the knife in question is not a "dangerous weapon." However, "dangerous weapon" is not found in R.C. 2903.11(A)(2), and therefore, not applicable.
[9] The statements made by appellant in the letter include: (1) "[T]hey are going to charge you for lying and make it look like I made you lie;" (2) "Don't show up at all no matter what they say or do they are going to f*** me;" (3) "The thing is that day of court you have to stay low key;" (4) "Just don't show at all. You said you wouldn't wish this on anyone. Well, [C], all you have to do is get lost for a few days, but you can't go to work that day just in case he tries to come and bring you to Court."
[10] {¶ a} The jury instruction provided in this case are as follows:
{¶ b} "Evidence has been presented by the State indicating that the Defendant attempted to influence C.D.'s testimony and/or attempted to convince her to avoid testifying altogether. You are instructed that his efforts alone do not raise a presumption of guilt, but they may tend to indicate the Defendant's consciousness or awareness of guilt.
{¶ c} "If you find the facts do not support a finding that the Defendant engaged in this conduct, or if you are unable to decide what the Defendant's motive was, then you should not consider this evidence for any purpose.
{¶ d} "However, if you find that the facts support that the Defendant engaged in such conduct and you decide that the Defendant was motivated by consciousness or awareness of guilt, you may, but are not required to consider that evidence in deciding whether the Defendant is guilty of the crimes charged. You alone will determine what weight, if any, to give to this evidence."
[11] {¶ a) The instructions provided in Lawson are as follows:
{¶ b} "Testimony has been provided by the State that the Defendant attempted to conceal, alter, or destroy certain evidence relating to the offense charged in the indictment.
{¶ c} "In regard to this evidence you are instructed that attempts to conceal, alter or destroy evidence, in and of itself, does not raise a presumption of guilt on the part of the Defendant or a guilty connection with a crime.
{¶ d} "If you find that the Defendant's conduct was not motivated by consciousness of guilt, or if you are unable to determine what the Defendant's motivation was, you should not consider this evidence for any purpose.
{¶ e} "However, if you find the testimony is true and you find that the Defendant's conduct was motivated by consciousness of guilt, you may consider that evidence in determining whether or not the Defendant is guilty of the offense charged. You alone will determine the weight, if any, to be given to this evidence."
[12] Although appellant had not been convicted of any felonies, his criminal record did include an attack on a pregnant woman where he "stated several times that he would stomp the unborn baby out of [the victim]
after he killed it." The trial court also stated that it was concerned appellant's violent acts "could escalate if an appropriate sentence is not imposed in this case to prevent it in the future."
[13] The trial court did note that the state could introduce the audio recording in a redacted form if it excluded all references to appellant's potential punishment. The state did not attempt to introduce a redacted audio recording. *Page 1