OPINION
{¶ 1} Defendant-appellant Trevor Hawkins appeals his conviction and sentence from the Tuscarawas County Court of Common Pleas on two counts of possession of drugs. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On September 11, 2005, the Tuscarawas County Grand Jury indicted appellant on two counts of possession of drugs (heroin and oxycodone) in violation of R.C. 2925.11, felonies of the fifth degree. At his arraignment on December 1, 2005, appellant entered a plea of not guilty to the charges.
 {¶ 3} Subsequently, on January 17, 2006, appellant filed a Motion to Suppress. Appellant, in his motion, argued that the arresting officer lacked reasonable and articulable suspicion for stopping appellant and questioning him. Appellant further argued that the arresting officer did not have probable cause to search appellant's vehicle.
 {¶ 4} A hearing on appellant's Motion to Suppress was held on February 7, 2006. The following testimony was adduced at the hearing.
 {¶ 5} On March 15, 2005, at approximately 10:45 a.m., Officer Randy Williamson of the City of New Philadelphia Police Department went to a Subway Restaurant to eat lunch with his wife while on duty in his cruiser. When he passed the back part of the Subway parking lot, Officer Williamson noticed a vehicle sitting by itself facing the opposite direction of the Subway building. No other vehicles were around. Officer Williamson testified that he observed an individual in the car "looking down like he's doing something." Transcript at 9. *Page 3 
 {¶ 6} Because he was concerned that "something just wasn't right", the officer decided to walk over to the car and make sure that everything was okay. Transcript at 10. When he walked over to the driver's side, Officer Williamson asked the driver what he was doing there. The driver, who was appellant, told the officer that he was going to go into the Subway to see if it served breakfast. Because he did not know of any Subways in the area that served breakfast, Officer Williamson became suspicious.
 {¶ 7} At the hearing, Officer Williamson testified that he then asked appellant if there were any weapons or narcotics in the car, to which appellant responded in the negative. When the officer asked appellant if he had any problem with the officer checking his vehicle, appellant said "no" and stepped out of the car without being asked to do so. Officer Williamson further testified that appellant consented to a search of his person.
 {¶ 8} During a pat-down of appellant's person, the officer found a lighter shaped like a gun in appellant's front pocket. As Officer Williamson was standing talking to appellant, appellant reached inside the car door and grabbed something that sounded like cellophane and stuffed it into his pocket. When the officer asked appellant what he had put into his pocket, appellant said a cell phone. The following is an excerpt from the officer's testimony:
 {¶ 9} "A. I'm standing there talking to him and I think we had already got the items out of his pocket, he makes, he reaches for the door handle, inside the door, the door's open, and I hear him grab something that sounds like cellophane, I mean, it is cellophane. You can hear it, it's like cigarette wrapper cellophane.
 {¶ 10} "Q. Okay. *Page 4 
 {¶ 11} "A. And stuffs it in his pocket. I said what did you just put in your pocket? He said my cell phone. I said no, there's something else, a cell phone don't make noise like that. And at that time, he has his hand on his pocket and at, I believe I did reach in his pocket, pull out the cellophane which at that time, I noticed the five folds that were inside. I call them folds now because I know what they are but at that time, I wasn't aware of what it was.
 {¶ 12} "Q. Prior to reaching into his pocket, had Mr. Hawkins at any point told you my search, the search of me is over?
 {¶ 13} "A. No.
 {¶ 14} "Q. Or no more, no more searching?
 {¶ 15} "A. No, sir, he did not.
 {¶ 16} "Q. Okay. So you reach into his pocket and you pulled out the cellophane?
 {¶ 17} "A. Yes.
 {¶ 18} "Q. And what did you find?
 {¶ 19} "A. There were five small packets, I believe they were white and I think they had a sort of like a red marking on them, I'm not real positive on that. For some reason, I think that's what they look like. But I know they're folds and they're about oh, probably an inch long, half inch wide and they're folded up, that's why they call them folds. They were all in this cellophane, there's five of them.
 {¶ 20} "Q. Okay. Had Mr. Hawkins placed any type of limitations on where you could search either on him or in the vehicle?
 {¶ 21} "A. No, sir. *Page 5 
 {¶ 22} "Q. After you find this item, what's Mr. Hawkins' response?
 {¶ 23} "A. I asked him what it is, he says that he doesn't know and it just transpired from there. It's, we keep asking him what it is because at that time, I'm thinking that it's OxyContin to be honest with you because we had been getting, at that time, people crushing up OxyContin and shooting it up so I'm thinking it's OxyContin. And in reality, it turned out to be Heroin but at that time, I thought it was OxyContin. I knew it was a narcotic, I just didn't know what." Transcript at 13-14.
 {¶ 24} Officer Williamson testified that he strongly suspected that the cellophane contained illegal drugs based on his experience as a canine officer.
 {¶ 25} A subsequent search of appellant's car yielded two oxycodone pills in the center console.
 {¶ 26} On cross-examination, Officer Williamson testified that the cellophane looked like the clear cellophane that is on the outside of a cigarette pack and that there were an inch and a half long and an inch and a half wide folds inside of the cellophane.
 {¶ 27} On redirect, Officer Williamson testified that appellant never asked if he could leave.
 {¶ 28} At the suppression hearing, Officer Shawn Nelson of the City of New Philadelphia Police Department testified that he responded to Officer Williamson's call and went to the Subway at approximately 11:00 a.m. Officer Nelson testified that he arrived on the scene while Officer Williamson was questioning appellant about the cellophane packet. The officer testified that Officer Williamson laid the item on the roof and that "I stepped over and looked at it and I remember that it had some kind of white *Page 6 
powdery substance." Transcript at 4. Officer Nelson testified that he suspected it was a narcotic.
 {¶ 29} At the suppression hearing, appellant testified that, on March 15, 2005, he went to the Subway to get breakfast and that he was sitting in his car flipping through his money since he did not want to take all of the money on him into the Subway. Appellant had a total of $525.00 in his pocket at the time. Appellant further testified that he consented to a search of his person by Officer Williamson and that, "after they got done and didn't find anything, they, he had stated that he was going to, they were going to further search the car then. As soon as he said that, I went to reach for my cell phone and then once he seen me reach to grab my cell phone, then they just started searching, they just went to start to search the car then after that also." Transcript at 33-34. Appellant denied giving consent to search his vehicle. He further testified that Officer Nelson's cruiser was pulled directly behind his and that "they had me between the cars detained, . . ." Transcript at 35. Appellant testified that he did not feel free to leave and also testified that the item suspected to be heroin was not found in his pocket. Rather, appellant testified that he did not have anything in his pocket at the time of the search and that heroin was found in his car. Appellant testified that there was no struggle with his pocket because he did not have anything in his pocket.
 {¶ 30} Pursuant to a Judgment Entry filed on March 17, 2006, the trial court denied appellant's Motion to Suppress, finding that the March 15, 2005, incident was a consensual encounter "which ripened into an arrest upon the discovery of suspected contraband on the person of the defendant, pursuant to a consensual search." The trial court further found that appellant had never withdrawn his consent to the search of his *Page 7 
person and that, based on the large amount of cash and suspected contraband found on appellant's person, the officers had probable cause to search appellant's vehicle.
 {¶ 31} Thereafter, on March 27, 2006, appellant pleaded no contest to the charges contained in the indictment. Appellant was sentenced via a Judgment Entry filed on May 3, 2006.
 {¶ 32} Appellant now raises the following assignments of error on appeal:
 {¶ 33} "I. THE ENCOUNTER BETWEEN MR. HAWKINS AND THE OFFICERS CEASED BEING A CONSENSUAL ENCOUNTER WHEN OFFICER NELSON ARRIVED.
 {¶ 34} "II. THE SEARCH OF THE DEFENDANT'S VEHICLE WAS CLEARLY UNLAWFUL AS THE OFFICERS HAD NO PROBABLE CAUSE AT THE TIME THE SEARCH BEGAN."
 I, II {¶ 35} Appellant, in his two assignments of error, challenges the trial court's denial of his Motion to Suppress. Appellant specifically contends that the encounter between appellant and the two officers ceased being a consensual encounter when Officer Nelson arrived on the scene and that the search of appellant's vehicle was unlawful because the officers did not have probable cause at the time the search began. We disagree.
 {¶ 36} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v.Fanning *Page 8 
(1982), 1 Ohio St.3d 19, 437 N.E .2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994),95 Ohio App.3d 93, 641 N.E.2d 1172; State v. Claytor (1993),85 Ohio App.3d 623, 620 N.E.2d 906; Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S., (1996), 517 U.S. 690,116 S.Ct. 1657,". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 37} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594 (citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778, 1992 WL 91647. *Page 9 
 {¶ 38} In Terry v. Ohio (1968), 392 U.S. 1, 22, 88 S.Ct. 1868, the United States Supreme Court determined "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980),64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus.
 {¶ 39} However, a stop does not have to meet the Terry test if it involves a consensual encounter. A consensual police encounter versus aTerry stop is explained in State v. Taylor (1995), 106 Ohio App.3d 741,667 N.E.2d 60, as follows:
 {¶ 40} "The first type is a consensual encounter. Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away. * * * The request to examine one's identification does not make an encounter nonconsensual. * * * Nor does the request to search a person's belongings. * * * The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. * * * Once a person's liberty has been restrained, the encounter loses its consensual nature . . ." Id. at 747. (Citations omitted). *Page 10 
 {¶ 41} In the case sub judice, appellant does not argue that his initial encounter with Officer Williamson was not consensual. As is stated above, Officer Williamson approached appellant as he sat in his car in the Subway parking lot. Rather, appellant argues that his encounter ceased being consensual when Officer Nelson arrived on the scene and blocked appellant's car with his cruiser and that his Fourth Amendment right against unreasonable searches and seizures was violated.
 {¶ 42} However, we note that no Fourth Amendment violation occurs when an individual voluntarily consents to a search. See United States v.Drayton (2002), 536 U.S. 194, 207, 122 S.Ct. 2105, (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"). In order to rely upon a purported consent to search, the State must demonstrate by clear and positive evidence that consent was freely and voluntarily given. State v. Posey (1988),40 Ohio St.3d 420, 427, 534 N.E.2d 61, certiorari denied (1989), 492 U.S. 907,109 S.Ct. 3217, 106 L.Ed.2d 567. "[W]hether a consent to search was in fact `voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. at 227,36 L.Ed.2d at 862-863. Consent may be limited or withdrawn even after a search has started. See State v. Rojas (1993), 92 Ohio App.3d 336,635 N.E.2d 66 and State v. Mack (1997), 118 Ohio App.3d 516, 693 N.E.2d 821.
 {¶ 43} In the case sub judice, appellant does not dispute that he gave Officer Williamson consent to search his person. The record demonstrates that such consent was given before Officer Nelson arrived on the scene. Thus, appellant's consent was given when the encounter was consensual. There is no evidence in the record, nor *Page 11 
does appellant argue, that Officer Williamson made any showing of authority. Rather, testimony was adduced at the hearing that he approached appellant without activating the overhead lights on his cruiser or having his weapon drawn. Moreover, as noted by the trial court in it entry, there is no evidence that the consent appellant gave to search his person was ever withdrawn. We note that appellant did not testify at the suppression hearing that he withdrew such consent or that his consent was not voluntarily given or was the product of duress or coercion.
 {¶ 44} As is stated above, appellant also argues that the search of his vehicle was unlawful. However, under the automobile exception to the warrant requirement, police may conduct a warrantless search of an entire vehicle if the police officers have probable cause to believe that they will discover evidence of a crime. United States v. Ross
(1982), 456 U.S. 798, 800-801, 102 S.Ct. 2157; State v. Moore (2000),90 Ohio St.3d 47, 51, 734 N.E.2d 804, 2000-Ohio-10. The trial court, in its entry, found that the large amount of cash ($525.00) and the suspected contraband found on appellant's person provided the officers with probable cause to believe that the car contained evidence of a crime. We agree. As is stated above, appellant was actually observed by Officer Williamson removing something from the car and placing it in his pocket. When Officer Williamson removed the same from appellant's pocket, he discovered clear cellophane with five folds inside. Officer Williamson testified that, based on his experience as a canine officer and his frequent contact with illegal drugs, he strongly suspected that some type of narcotic was contained in the cellophane based on the packaging and the appearance of the item. We find, therefore, that the search of the *Page 12 
appellant's car was proper since the officers had probable cause to believe they would find evidence of a crime in appellant's vehicle.
 {¶ 45} Based on the foregoing, we find that the trial court did not err in denying appellant's Motion to Suppress.
 {¶ 46} Appellant's two assignments of error are, therefore, overruled.
 {¶ 47} Accordingly, the judgment of the Tuscarawas County Court of Common Pleas is, therefore, affirmed.
Edwards, J. Hoffman, P.J. and Farmer, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1