OPINION
{¶ 1} Defendant-appellant, Milton L. Good, Jr., appeals his convictions for failing to comply with an order or signal of a police officer which resulted in his arrest by the Middletown Police Department on March 9, 2006. Appellant also appeals his convictions for having weapons while under disability, possession of cocaine, and illegal use or possession of drug paraphernalia, which resulted from his arrest by the Middletown Police Department on April 20, 2006. As this appeal involves two incidents resulting in separate trials, the facts *Page 2 
are divided in parts.
 Part I {¶ 2} On March 9, 2006, at approximately 1:00 a.m., Middletown Police Officers Nicholas Marconi and James Wilcox were on patrol near Girard Avenue and Park Street in Middletown, when they observed a 2003 Kia Sorrento travelling westbound on Girard in excess of the posted speed limit of 25 m.p.h. The officers followed the Sorrento and activated the emergency lights and siren to initiate a traffic stop. The driver of the Sorrento stopped the vehicle in front of a Chevrolet Impala in the 900 block of Ninth Avenue, and the driver of the Impala pulled away and drove down the street. The officers then exited the patrol car, approached the Sorrento, and Officer Wilcox recognized appellant as the driver and only person inside the vehicle.[1] Suddenly, the driver of the Impala stopped the vehicle, put it in reverse, and drove backwards at a high rate of speed. The driver of the Impala stopped the vehicle in between the patrol car and the Sorrento. Appellant then drove the Sorrento at a high rate of speed from Ninth Avenue to Main Street, and the driver of the Impala followed closely behind the Sorrento.
 {¶ 3} The officers followed the two vehicles southbound on Main Street, and passed the Impala near 14th Avenue. Moments later, the driver of the Impala passed the officers at approximately 120 m.p.h. on Main Street. Appellant turned eastbound on Pinta Avenue, and when the driver of the Impala attempted to make the turn, the driver lost control of the vehicle and ended up in a yard.[2] The officers continued following appellant at a high rate of speed as appellant turned southbound on Route 4 with Officer Marconi driving the patrol car and Officer Wilcox communicating to other units and maintaining visual contact with the Sorrento. *Page 3 
The officers momentarily lost visual contact with the Sorrento when appellant turned the Sorrento's headlights off on Route 4, but Officer Wilcox used the patrol car spotlight to locate the Sorrento as it drove southbound on Route 4 in the northbound lane. Eventually appellant turned the headlights on and drove back into the southbound lane of Route 4, until he exited onto Route 63 and stopped the vehicle. Officers arrested appellant and took him into custody.
 {¶ 4} Following appellant's trial on January 31, 2007, the jury found appellant guilty of failing to comply with an order or signal of a police officer in violation of R.C. 2921.331(B).
 Part II {¶ 5} On April 20, 2006, Middletown Police Officer Dennis Jordan was conducting a routine patrol on Eighth Avenue in Middletown in his patrol car when he observed a driver park a vehicle illegally by driving the car onto the curb and parking it with its tires on the sidewalk. Officer Jordan approached the vehicle and observed appellant sitting in the driver seat, with the front driver-side door open, and one passenger, Mareesha Brown, sitting in the front passenger seat. As Officer Jordan approached the vehicle, he smelled marijuana and marijuana smoke emanating from the vehicle. Appellant's door was open and his dome light was on, and Officer Jordan observed marijuana seeds on the floor of the vehicle as he spoke to appellant.
 {¶ 6} Officer Jordan asked appellant if he could search him, and appellant consented. Officer Jordan conducted a pat down and discovered 0.33 grams of crack cocaine contained in a cellophane wrapper in appellant's pants pocket.
 {¶ 7} Officer Jordan placed appellant under arrest and put him the back seat of the patrol car. Officer Jordan did not engage appellant in any further conversation or otherwise ask him any questions. Officer Jordan removed Brown from the vehicle as well and placed *Page 4 
her in the rear of the patrol car alongside appellant. Officer Jordan activated the interior camera and microphone in his patrol car as he conducted a search of the vehicle. The in-car microphone recorded a conversation between Brown and appellant where appellant stated that someone needed to come back to 934 Eighth Avenue and remove a gun from the house. During this conversation appellant also mentioned an unspecified item underneath the couch in the house. Also, while conducting a search of appellant's vehicle, Officer Jordan found a camera phone with a picture on it depicting crack cocaine on a scale.
 {¶ 8} After discovering that appellant resided at 934 Eighth Avenue in Middletown, Officer Jordan obtained a search warrant to search appellant's house based upon the recorded conversation that transpired between appellant and Brown. Officers from the Middletown Police Department executed the search warrant on appellant's house and discovered more crack cocaine, digital scales, cocaine residue, plastic baggies, razorblades, two handguns, and ammunition.
 {¶ 9} On August 20, 2006, appellant moved to suppress evidence seized by Middletown Police. After a hearing, the trial court denied appellant's motion.
 {¶ 10} Following appellant's trial on October 16 and 17, 2007, the jury found appellant guilty of having weapons under disability in violation of R.C. 2923.13(A), possession of one gram, but less than five grams, of crack cocaine in violation of R.C. 2925.11(A), and illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1).
 Sentencing {¶ 11} The trial court conducted a joint sentencing hearing on March 2, 2007, and sentenced appellant as follows: a two-year prison term on his conviction for having weapons while under disability ("Count 1"); a one-year prison term on his conviction for possession of cocaine ("Count 2"); a 30-day jail term on his conviction for illegal use or possession of drug *Page 5 
paraphernalia ("Count 3"); and a five-year prison term on his conviction for failing to comply with the order or signal of a police officer ("Count 4"). The trial court ordered that the prison sentences imposed on Counts 1, 2, and 4 be served consecutively, and that the sentence on Count 3 shall be served concurrently with Counts 1 and 2.
 {¶ 12} Appellant appeals his convictions, raising two assignments of error.
 {¶ 13} Assignment of Error No. 1:
 {¶ 14} "THE TRIAL COURT ERRED IN RULING THAT JORDAN'S INITIAL CONTACT WITH GOOD WAS CONSENSUAL, RATHER THAN A `TERRY STOP' INVOKINGFOURTH AMENDMENT PROTECTION, AND IN FAILING TO SUPPRESS EVIDENCE THAT WAS `FRUIT OF THE POISON TREE' STEMMING FROM THAT ILLEGAL TERRY STOP."
 {¶ 15} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Wilson, Clinton App. No. CA2006-03-008, 2007-Ohio-353, ¶ 17; State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. An appellate court must accept the trial court's findings of fact as long as they are supported by competent, credible evidence. Id. However, an appellate court reviews de novo the trial court's application of the law to the facts. State v. Greene, Warren App. No. CA2005-12-129, 2006-Ohio-6084, ¶ 8; State v.Featherstone, 150 Ohio App.3d 24, 2002-Ohio-6028, ¶ 10.
 {¶ 16} We begin our analysis with the basic premise that theFourth Amendment protects a citizen's right to be free from all unreasonable searches and seizures, except in several well defined situations.Horton v. California (1990), 496 U.S. 128, 133, 110 S.Ct. 2301. The proper remedy for a Fourth Amendment violation is the suppression of evidence obtained by virtue of the violation. Blanchester v. Hester
(1992), 81 Ohio App.3d 815, 820.
 {¶ 17} Both the Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution guarantee the right of people to be secure from unreasonable searches and seizures. "A `search,' for purposes of Fourth Amendment *Page 6 
jurisprudence, is the examination of an individual's property with a view to the discovery of contraband to be used in prosecuting that individual in a criminal action. A `seizure' is defined as any encounter with the law enforcement where, `in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' Either of these two actions is generally deemed `unreasonable' whenever they are taken without a warrant." (Citations omitted.) State v. LeClaire, Clinton App. No. CA2005-11-027,2006-Ohio-4958, ¶ 8.
 {¶ 18} It is well-recognized that officers may briefly stop and detain an individual, without an arrest warrant and without probable cause, in order to investigate a reasonable and articulable suspicion of criminal activity. See Terry v. Ohio (1967), 392 U.S. 1, 19-21, 188 S.Ct. 1868;State v. Bobo (1988), 37 Ohio St.3d 177. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances" as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." LeClaire, ¶ 9, quoting State v. Freeman
(1980), 64 Ohio St.2d 291, syllabus and Bobo at 179.
 {¶ 19} However, it is also well-recognized that the Fourth Amendment is not implicated in all personal encounters between police officers and citizens, such as the case where there is a consensual encounter.Florida v. Bostick (1991), 501 U.S. 429, 434, 111 S.Ct. 2382, 2386;State v. Stewart, Butler App. No. CA2000-07-148, 2001-Ohio-4217. "An encounter which does not involve physical force or a show of authority is a consensual encounter that does not trigger Fourth Amendment scrutiny; therefore, an officer does not need reasonable suspicion merely to approach an individual in order to make reasonable inquiries of him." Stewart at 4, quoting State v. Brock (June 1, 1989), Clermont App. No. CA97-09-177. The fact that a police officer identifies himself as such does not "convert the encounter into a seizure requiring some level of objective justification." Florida v. Royer (1983),460 U.S. 491, *Page 7 
498, 103 S.Ct. 1319, 1324. "[A] police officer's approach and questioning of the occupant of a parked vehicle does not constitute a seizure, and therefore does not require reasonable, articulable suspicion of criminal activity." Stewart at 4, citing State v. Reed
(Sept. 11, 2000), Clermont App. No. CA99-11-102. "Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." State v. Taylor (1995),106 Ohio App.3d 741, 747.
 {¶ 20} Based on our review of the evidence, we find that the initial encounter between appellant and Officer Jordan was consensual, and consequently, Officer Jordan was not required to have reasonable, articulable suspicion of criminal activity to approach appellant. SeeState v. Potter, Butler App. No. CA2006-07-166, 2007-Ohio-4216. According to the record, Officer Jordan observed appellant voluntarily stop his vehicle and park it illegally. There is nothing in the record to indicate that Officer Jordan signaled or otherwise instructed appellant to stop the vehicle. Further, nothing in the record indicates that the encounter involved any physical force, that Officer Jordan exercised any authority as a police officer, or that appellant was stopped by the officer.
 {¶ 21} It was during this consensual encounter that Officer Jordan became increasingly more suspicious that appellant was involved in some type of illegal drug activity, and the officer was permitted to continue the investigation based on this suspicion. See Potter at ¶ 15. According to the record, Officer Jordan noticed a strong odor of marijuana and marijuana smoke emanating from appellant's vehicle and observed marijuana seeds on the floor of appellant's vehicle. Officer Jordan testified that he worked in the narcotics unit of the Middletown Police Department for three years, where he personally handled marijuana and marijuana seeds. Based on Officer Jordan's experience, he was qualified to identify what he saw and smelled as marijuana and marijuana smoke. See State v. Maupin (1975) *Page 8 42 Ohio St.2d 473; State v. Garcia (1986), 32 Ohio App.3d 38. Officer Jordan was permitted to conduct a warrantless search of both appellant's person and his vehicle based on his previous experience, and based on Officer Jordan's knowledge of appellant's prior drug-related convictions.State v. Moore, 90 Ohio St.3d 47, 49, 2000-Ohio-10; Beck v. Ohio (1965),379 U.S. 89, 97, 95 S.Ct. 223. Moreover, the record indicates that appellant freely and voluntarily consented to a search of his person, and there is no evidence that appellant withdrew this consent at any time. See United States v. Drayton (2002), 536 U.S. 194, 122 S.Ct. 2105;State v. Hawkins, Tuscarawas App. No. 2006 AP 06 0028, 2007-Ohio-2080. Accordingly, we find no violation of the Fourth Amendment, and we find that the trial court properly overruled appellant's motion to suppress.
 {¶ 22} Appellant's first assignment of error is overruled.
 {¶ 23} Assignment of Error No. 2:
 {¶ 24} "THE TRIAL COURT ERRED IN CONVICTING GOOD OF FAILURE TO COMPLY WITH THE ORDER OF A POLICE OFFICER AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 25} A court considering whether a conviction was against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. The question is whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Id.; State v. Blanton, Madison App. No. CA2005-04-016, 2006-Ohio-1785, ¶ 7.
 {¶ 26} We are mindful that the discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. A unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required *Page 9 
to reverse a judgment on the weight of the evidence in a jury trial. Id. at 389.
 {¶ 27} In this assignment of error, appellant challenges his conviction for violating R.C. 2921.331(B), which provides, "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."
 {¶ 28} Appellant contends that the evidence presented at trial does not support that he was the driver of the Sorrento. Appellant argues that the Officer Wilcox could not have had a clear view inside the Sorrento when he approached it initially, and that the officers lost visual contact with the Sorrento several times during the chase. Further, appellant claims that the testimony of his witness directly contradicts the officers' testimony that appellant was the driver.
 {¶ 29} At trial, Officer Wilcox testified that he did identify the driver of the Sorrento as appellant when the officers initially stopped the vehicle, and that appellant was the sole occupant of the vehicle. Also, Officer Marconi testified that when appellant ultimately stopped the Sorrento on Route 63 and surrendered, appellant was the sole occupant of the vehicle. Further, the video from the patrol car camera corroborates Marconi's testimony.
 {¶ 30} Appellant's witness, Esther Williams, testified that she saw appellant sitting in the passenger seat of a "grayish" truck sometime between 12:30 and 1:00 a.m. the night appellant was arrested. Williams testified that she did not recognize the driver of the truck, but said the driver "had a red hat on and was dark-skinned."
 {¶ 31} While Williams' testimony does not entirely contradict the officers' testimony, we remind appellant that, "the weight to be given the evidence, and the credibility of witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Moreover, the decision of the jury is owed deference since its members were "best able to view the witnesses and observe their demeanor, gestures and voice *Page 10 
inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. We find that this is not an exceptional case where the evidence weighs heavily in favor against the conviction, and the finder of fact did not clearly lose its way or create a manifest miscarriage of justice in finding appellant guilty of violating R.C. 2921.331(B). SeeThompkins at 387.
 {¶ 32} Appellant's second assignment of error is overruled.
 {¶ 33} Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] Officer Wilcox knew appellant's identity as he had arrested appellant on previous occasions.
[2] Officer Marconi testified that while the officers decided not to pursue the Impala at this time, Officer Wilcox had identified the driver of the Impala when all of the vehicles were stopped. *Page 1