[Cite as *State v. Cruz*, 2013-Ohio-215.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

STATE OF OHIO,                             :

    Plaintiff-Appellee,                  :         CASE NO.   CA2012-03-059

                                :         O P I N I O N
   - vs -                                    1/28/2013

                                  :

ALFREDO LOPEZ CRUZ,                        :

    Defendant-Appellant.                 :

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2005-12-2276

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Christopher P. Frederick, 304 North Second Street, Hamilton, Ohio 45011, for defendant-appellant

**RINGLAND, J.**

{¶ 1} Defendant-appellant, Alfredo Lopez Cruz, appeals his convictions in the Butler County Court of Common Pleas for rape. For the reasons stated below, we affirm.

{¶ 2} On December 14, 2005, a Butler County Grand Jury indicted appellant on one count of kidnapping, in violation of R.C. 2905.01(A)(4), and on four counts of rape, in violation of R.C. 2907.02(A)(1)(b). The charges involved the alleged rape and kidnapping of

W.C. W.C. was nine years old at the time of the offense. Police were unable to locate appellant for several years. In 2011, he was eventually discovered in Mexico and extradited to Butler County. On September 28, 2011, appellant entered not guilty pleas to each charge. Subsequently, a jury trial was held where the state presented several witnesses.

{¶ 3} The state's first witness was W.C. W.C. testified that on June 19, 2005, she was riding her bicycle with her sister and a friend near her home. W.C. separated from her sister and friend and rode alone through an alley. As W.C. was turning to leave the alley, she noticed appellant sitting on a picnic table drinking beer. Appellant motioned for W.C. to come to him. When W.C. rode over to appellant, he picked her bicycle up with her still on it and took both of them inside his house. Once inside the house, W.C. stated that appellant threw her bicycle into a closet, picked her up "like a baby," and took her upstairs. While she was in appellant's arms, W.C. began screaming and crying. Appellant told her to "shut up" and hit her on the face hard enough to cause her nose to bleed. Then appellant took her to an upstairs bedroom.

{¶ 4} Once inside the bedroom, appellant told W.C. to take off her clothes. She refused so appellant removed her clothing and then threw her onto a bed. Appellant then took off his clothes. W.C. testified that while she was lying on the bed, appellant "lifted up my leg and put his penis inside my butt." She stated that she started crying because "it hurt real bad." Appellant then kissed her chest and the back of her thighs. After this incident, W.C. told appellant that she needed to use the restroom. Appellant followed her to the bathroom and stuck his penis insider her mouth while she was urinating. She testified that the penis tasted disgusting and smelled.

{¶ 5} After appellant was finished, he took W.C. back to the bedroom. W.C. testified that appellant then placed his penis and his finger inside her vagina. She stated that it hurt and that she laid there because she was in too much pain to do anything. During this, a man

- 2 -

knocked on the bedroom door. Appellant hid W.C. behind a door and told her not to make a sound or he would kill her. Appellant spoke to the man in Spanish and went downstairs momentarily to get some cigarettes and beer. When appellant returned, he made W.C. smoke a cigarette and drink some beer.

{¶ 6} Afterwards, W.C. asked to use the restroom again and appellant told her to urinate on the floor. W.C. complied and when she was finished, appellant anally penetrated W.C. W.C. testified that during the sexual assaults appellant never ejaculated and that she was bleeding from her rear and vagina. Appellant told W.C. to write her name on the wall and she did this with a black marker. Later, W.C. told appellant that she was tired and appellant stated that they could both take a nap. Once appellant fell asleep, W.C., naked, escaped from the house and ran to her home across the street.

{¶ 7} The next witness to testify was W.C.'s grandmother. The grandmother testified that on the afternoon of June 19, 2005, W.C. was riding her bicycle with her friends. Around 6:00 p.m. when W.C. had not returned, the grandmother became concerned and started looking for W.C. Thereafter, W.C. came into the house naked and stated that appellant had hurt her. The grandmother then went to appellant's house to confront him. She found him asleep, naked on the bed. The grandmother woke him up by yelling at him. Shortly after, W.C.'s father arrived and during the scuffle, appellant escaped.

{¶ 8} Dr. Jonathan Thackeray, a physician who specializes in pediatric medicine and child abuse, also testified regarding his involvement in the case. Dr. Thackeray was working in the emergency department at Cincinnati Children's Hospital on June 19, 2005, and conducted a sexual assault examination on W.C. He stated that during the examination, W.C. complained of a pain in her buttocks and that she had redness and abrasions in her genital region. Dr. Thackeray took samples from W.C.'s mouth, anus, genital area, chest, and legs for later testing. Dr. Thackeray did not find any signs of injury around W.C.'s anus

and did not find any bodily fluids in W.C.'s mouth, anus, or vaginal area. The doctor explained that these findings are still consistent with rape because when a perpetrator does not ejaculate and a child drinks and urinates after the assault, it lessens the likelihood that fluids would be found on the child. Dr. Thackeray did find bodily fluids on W.C.'s chest and thighs. Additionally, a medical record was introduced which shows that a nurse noted the presence of dried blood in the victim's vaginal area.

{¶ 9} The state also presented several detectives and police officers who were involved in the investigation of the case. Detective Cifuentes testified that he responded to scene around 8:30 p.m. Cifuentes stated that upon searching appellant's home, he found a girl's bicycle in a closet and several items of little girl's clothing in an upstairs bedroom. The Detective also found two cans of "Bud Light" beer, adult clothes, and W.C.'s first name written in black marker in appellant's bedroom. He testified that upon kneeling on the carpet, he felt something wet and it smelled like urine. Cifuentes also saw reddish stains on a mattress in the bedroom. Another detective testified that he took fingerprints from the bicycle found in appellant's home. Most of the fingerprints found were W.C.'s but one fingerprint was consistent with appellant's fingerprints, to the exclusion of all others.

{¶ 10} A forensic toxicologist and a forensic scientist also testified regarding their participation in the case. The forensic toxicologist testified that she tested W.C.'s blood for alcohol and her blood alcohol content tested at .01. The forensic scientist also testified that he conducted DNA tests from the samples obtained by Dr. Thackeray. He stated that the samples from W.C.'s mouth, vagina, and anus did not show any signs of semen. However, the samples from W.C.'s chest and legs indicated that the fluid found on W.C. was appellant's saliva. Additionally, the stains on the mattress showed that a major contributor to the stains was W.C.

{¶ 11} After the presentation of all the witnesses, a unanimous jury found appellant

- 4 -

guilty of four counts of rape and one count of kidnapping. The court merged the kidnapping conviction with the rape convictions. Appellant was then sentenced to serve four life sentences, three of which are to run consecutively.

{¶ 12} Appellant now appeals, raising four assignments of error.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT VIOLATED APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR TRIAL BY FAILING TO INSTRUCT TO THE JURY ON A LESSER OFFENSE OF GROSS SEXUAL IMPOSITION.

{¶ 15} Appellant argues that the trial court erred when it denied his request for jury instructions on the lesser-included offense of gross sexual imposition. Specifically, appellant contends that the lack of physical evidence regarding the alleged anal penetrations of W.C. reasonably supports an acquittal on these charges while the physical evidence on W.C.'s legs and chest reasonably supports a conviction for gross sexual imposition.

{¶ 16} Appellant was found guilty of rape in violation of R.C. 2907.02(A)(1)(b). Appellant asserts that the court erred when it refused to instruct the jury on gross sexual imposition in violation of R.C. 2907.05. Gross sexual imposition is a lesser-included offense of rape. *State v. Lawrence*, 12th Dist. No. CA2007-01-017, 2008-Ohio-1354, ¶ 23, citing *State v. Johnson*, 36 Ohio St.3d 224, 226 (1988). The pertinent difference between rape and gross sexual imposition is "sexual conduct" which is an element of rape and, "sexual contact," which is an element of gross sexual imposition. R.C. 2907.01(A) defines sexual conduct as,

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and without privilege to do so, the insertion, however slight of any part of the body * * * into the vaginal or anal opening of another. Penetration, however slight is sufficient to complete vaginal or anal intercourse.

{¶ 17} On the other hand, sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." *Id.* at (B).

{¶ 18} Jury instructions are matters left to the sound discretion of the trial court. *State v. Guster*, 66 Ohio St.2d 266, 271 (1981). Therefore, this court reviews the trial court's decision refusing to provide the jury with a requested jury instruction for an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

{¶ 19} A jury instruction on a lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense. *State v. Carroll*, 12th Dist. Nos. CA2007-02-030, CA2007-03-041, 2007-Ohio-7075, ¶ 136, citing *State v. Carter*, 89 Ohio St.3d 593, 600 (2000). However, an instruction is not warranted simply because the defendant offers "some evidence" to establish the lesser-included offense. *State v. Shane*, 63 Ohio St.3d 630, 632-633 (1992). Instead, there must be "sufficient evidence" to "allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included offense." (Emphasis sic.) *State v. Anderson,* 12th Dist. No. CA2005-06-156, 2006-Ohio-2714, ¶ 11, quoting *Shane* at 632-633. In making this determination, the trial court must consider the evidence in a light most favorable to the defendant. *State v. Smith*, 89 Ohio St.3d 323, 331 (2000).

{¶ 20} The Ohio Supreme Court has addressed whether a court erred when it refused to instruct the jury regarding gross sexual imposition in a prosecution for rape. *Johnson*, 36 Ohio St.3d 224. In *Johnson*, the defendant was charged with multiple counts of rape. *Id.* at

226. Although it was clear that sexual contact also occurred, the state chose to narrowly focus its case on the rape charges. *Id.* at 226. The defendant completely denied being involved in the rapes and the state's case depended upon the victim's testimony as to penetration because no physical evidence of the rapes existed. *Id.* at 227. The Court held that,

> A criminal defendant is not entitled to a jury instruction on gross sexual imposition as a lesser included offense of rape where the defendant has denied participation in the alleged offense, and the jury, considering such defense, could not reasonably disbelieve the victim's testimony as to "sexual conduct," R.C. 2907.01(A), and at the same time, consistently and reasonably believe her testimony of mere "sexual contact," R.C. 2907.01(B).

*Id.* at paragraph two of the syllabus.

{¶ 21} Thus, in light of the defendant's complete defense and the victim's testimony as to penetration, a jury instruction on the lesser-included offense of gross sexual imposition would allow the jury to make an unreasonable decision. *Id.* at 227. Although there was evidence that tended to show that there were incidents of gross sexual imposition *in addition* to the charged rapes, "nothing in the record reasonably proves that such incidents were included within the charged events" and thus an instruction regarding this offense was improper. *Id.* at 228.

{¶ 22} We find that the trial court did not abuse its discretion in refusing to instruct the jury on the lesser-included offense of gross sexual imposition. At trial, W.C. consistently testified that appellant penetrated her vaginally, anally, and required her to perform fellatio. Similar to *Johnson,* appellant offered a complete defense to the rapes. His defense was that he did not engage in any act that constituted rape with W.C. and not that W.C. couldn't differentiate between improper touching and penetration. The state's case primarily rested on the weight the jury gave to W.C.'s testimony concerning the anal penetrations. In regards to the instances of rape, there was no evidence to support mere sexual contact, instead the

victim was unequivocal in her testimony that penetration occurred. Therefore, *Johnson* prohibited the trial court from instructing the jury regarding the lesser-included offense of gross sexual imposition. Instructing the jury for an offense in which there was no evidence to support it would confront the jury with the choice of reaching an unreasonable conclusion.

{¶ 23} We also note that W.C.'s testimony regarding appellant's kissing of her chest and legs did not support an instruction for gross sexual imposition. While W.C. testified to the kissing, this testimony was in addition to her testimony regarding the multiple instances of rape. Similar to *Johnson*, while it was clear that sexual contact occurred, the state chose to narrowly focus its case upon the four instances of rape. Therefore, these acts were not relevant to whether appellant engaged in conduct that constituted rape.

{¶ 24} Appellant's first assignment of error is overruled.

{¶ 25} Assignment of Error No. 2:

{¶ 26} THE TRIAL COURT VIOLATED APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR TRIAL BY FAILING TO EXCUSE TWO OF THE JURORS FOR CAUSE, AND THE RESULTING COMPOSITION OF THE JURY DENIED HIM OF HIS CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY.

{¶ 27} Appellant argues that the court abused its discretion when it declined to excuse two jurors for cause. Appellant asserts that two potential jurors, juror 992 and juror 263, had personal experiences that created a bias against appellant and both jurors never clearly indicated that they could be fair and impartial.

{¶ 28} Generally, the denial of a challenge for cause does not violate a defendant's constitutional rights. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 182. However, when an appellant exhausts his peremptory challenges in voir dire, we consider the merits of the denial of a for cause challenge. *Id.* The determination of whether a prospective juror should be disqualified for cause is a discretionary function of the trial court and will not

be reversed on appeal absent an abuse of that discretion. *State v. Miller*, 12th Dist. No. CA2009-04-106, 2010-Ohio-1722, ¶ 21 citing *State v. Nields*, 93 Ohio St.3d 6, 20-21 (2001).

{¶ 29} A person called as a juror can be challenged for cause when the "juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state." Crim.R. 24(C)(9). However, "no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict." Crim.R. 24(C)(9). *See* R.C. 2945.25.

{¶ 30} Where a prospective juror gives contradictory answers regarding his or her impartiality on voir dire, the trial judge need not accept the last answer elicited by counsel as the prospective juror's definitive word. *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 22. Rather, "it is for the trial court to determine which answer reflects the juror's true state of mind." *Id.* quoting *State v. Jones*, 91 Ohio St.3d 335, 339 (2001).

{¶ 31} This court has addressed whether a trial court erred in failing to remove a juror for cause when the juror expressed concern about being impartial. *Miller*, 12th Dist. No. CA2009-04-106, 2010-Ohio-1722. In *Miller*, the defendant was charged with shaking and injuring a baby. *Id.* at ¶ 24. In response to defense counsel's questions as to impartiality, the juror testified that he is going through a "long and involved process of trying to adopt" and that he becomes frustrated with those who have children and abuse them. *Id.* The juror stated that he was "*not 100 percent*" sure that he could be impartial. (Emphasis added.) *Id.* He explained, "*I'm not saying I can't be*, but it's just given my experience, *like I said, I'm not sure.*" (Emphasis added.) *Id.* This court upheld the trial court's decision declining to remove the juror for cause. In so holding, we reasoned, "[t]he trial court had the opportunity to observe the demeanor of [the] prospective juror[] and evaluate firsthand the sincerity of [his] responses to questions about fairness and impartiality." *Id.* at ¶ 26.

{¶ 32} In the present case, juror 992 revealed that he has counseled several victims of sexual assault in the past. He stated that he was unsure if this experience would have an influence on his ability to be impartial and stated it "*would really depend on the testimony presented*." Defense counsel then asked, "So you couldn't say in the front end if that is going to have an impact or not?" Juror 992 replied, "*I can't say either way without knowing the evidence*."

{¶ 33} Another juror, juror 263, also expressed concerns about her ability to be impartial. The juror stated that a close friend of the family was sexually abused when she was 18. The following exchange then occurred,

> The Court: Will that affect your ability to be fair and impartial in this case? I mean, can you put that aside, sort of leave it at the door when you come in here and just say, you know, I've just— almost saying to yourself I'm not going to allow this to influence me or to enter into the rubix [sic]?
>
> Juror 263: *I hope I would be able to, yeah, I think so*.
>
> The Court: So you can put it aside?
>
> Juror 263: *Yeah*, I just wanted to make you aware that I did have that, so—

Defense counsel then asked the juror a series of questions regarding her ability to be impartial.

> Defense counsel: Being sexually, or being raped, is that going—I know you're saying you think you could be fair and impartial, fair to say that's going to have some impact on you?
>
> Juror 263: *Uh-huh, yeah, probably, I mean any time I get very angry, but I mean, I also feel like it's my civic duty to put it aside and really try, so—*
>
> Defense counsel: Do you—let me ask a different way
>
> Juror 263: Yeah, please
>
> Defense counsel: I understand you think you'll be able to do it, do you know you'll be able to do it? Is it something where you

- 10 -

think you can, you hope you can, or do you, as you stand here before, stand here before the Court know that you'll be able to set it aside?

Juror 263: *I don't know*, I'm real sorry, *I think I can but—*

**{¶ 34}** Appellant argues that the trial court erred in declining to remove Jurors 992 and 263 because both jurors had personal experience which created a bias against appellant and the jurors did not unequivocally indicate that they could be impartial. As noted above, both jurors acknowledged that they had personal experiences which gave them reservations as to whether they could be unbiased. However, this case is similar to *Miller* because while the jurors expressed hesitation regarding their bias, they never stated that they could not be impartial. Instead, juror 992 stated his ability to be impartial "depended on the evidence." Additionally, juror 263 indicated that she hoped she would be able to put her experience aside, she felt "like it's my civic duty to put it aside," and that she "thinks" she can be impartial. The trial court was in the best position to observe the demeanor of both prospective jurors and evaluate the sincerity of their responses. Therefore, we find the trial court did not abuse its discretion in declining to remove jurors 992 and 263 for cause.

**{¶ 35}** Appellant's second assignment of error is overruled.

**{¶ 36}** Assignment of Error No. 3:

**{¶ 37}** APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR TRIAL WERE VIOLATED WHEN HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

**{¶ 38}** Appellant argues that defense counsel was ineffective for failing to exercise a peremptory challenge to remove juror 263.

**{¶ 39}** To prevail on an ineffective assistance of counsel claim, appellant must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052

(1984). In order to demonstrate prejudice, appellant must establish, but for counsel's errors, a reasonable probability exists that the result of his trial would have been different. *State v. Ritchie*, 12th Dist. No. CA2008-12-304, 2009-Ohio-5280, ¶ 21, citing *Strickland* at 694. The failure to make an adequate showing on either prong is fatal to appellant's ineffective assistance of counsel claim. *State v. Bell*, 12th Dist. No. CA2008-05-044, 2009-Ohio-2335, ¶ 77, citing *Strickland* at 697. Judicial scrutiny of counsel's conduct must be highly deferential. *Id.* at 689.

{¶ 40} Voir dire is largely a matter of strategy and tactics. *Miller*, 12th Dist. No. CA2009-04-106, 2010-Ohio-1722 at ¶ 33, citing *State v. Keith*, 79 Ohio St.3d 514, 521 (1997). Decisions on the exercise of peremptory challenges are a matter of experience and trial technique and are a part of that strategy. *State v. Goodwin*, 84 Ohio St.3d 331, 341 (1999). Defense counsel, who observed the jurors firsthand, is in a much better position to determine whether a prospective juror should be peremptorily challenged. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 99.

{¶ 41} As the Ohio Supreme Court recognized in *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836 at ¶ 64,

> [f]ew decisions at trial are as subjective or prone to individual attorney strategy as juror voir dire, where decisions are often made on the basis of intangible factors. The selection of a jury is inevitably a call upon experience and intuition. The trial lawyer must draw upon his own insights and empathetic abilities. Written records give us only shadows for measuring the quality of such efforts. The selection process is more an art than a science, and more about people than about rules. (Internal citations omitted.)

Further, "because the use of peremptory challenges is inherently subjective and intuitive, an appellate record will rarely disclose reversible incompetence in this process." *Id.* at ¶ 83.

{¶ 42} Appellant has failed to establish that defense counsel was deficient or that he

was prejudiced by defense counsel's failure to use a peremptory challenge against juror 263. With regard to prejudice, "when a defendant bases an ineffective-assistance claim on an assertion that his counsel allowed the impanelment of a biased juror, the defendant '*must* show that the juror was *actually biased* against him.'" (Emphasis sic.) *Miller* at ¶ 35, quoting *Mundt* at ¶ 67. As discussed in the second assignment of error, the record does not support the proposition that juror 263 was actually biased against appellant. While juror 263 stated that she had personal experience with sexual abuse, she testified that she believed it was her civic duty to put that aside and that she believed she could be impartial.

{¶ 43} Additionally, the record does not demonstrate "reversible incompetence" in defense counsel's decision not to use one of his four peremptory challenges against juror 263. The record is devoid of any information regarding two of the four peremptorily-challenged jurors. One of the excused jurors stated that he had heard of the case, he has worked as a probation officer, his sister is a convicted felon, and his brother-in-law is a Butler County Sheriff's Deputy. The other excused juror, juror 992, has counseled many sexual assault victims. Although we have no information in the record regarding the other two excused jurors, it could easily be said that the four jurors who were peremptorily challenged might have been more damaging to appellant's case than juror 263. The reasons to challenge these four jurors might have been readily apparent to those viewing these jurors as they answered their questions.

{¶ 44} Thus, we find that defense counsel was not ineffective for failing to use a peremptory challenge against juror 263. Appellant's third assignment of error is overruled.

{¶ 45} Assignment of Error No. 4:

{¶ 46} APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 47} Appellant contends that his convictions were against the manifest weight of the

evidence. Specifically, appellant argues that his convictions regarding anal intercourse were in error because there was no physical evidence, such as tearing, bruising, or appellant's DNA, that corroborated W.C.'s testimony.

{¶ 48} A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *State v. Clements*, 12th Dist. No. CA2009-11-277, 2010-Ohio-4801, ¶ 19. A court considering whether a conviction is against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of the witnesses. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. However, while appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, these issues are primarily matters for the trier of fact to decide since it is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence. *State v. Gesell*, 12th Dist. No. CA2005-08-367, 2006-Ohio-3621, ¶ 34. Therefore, the question upon review is whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Good*, 12th Dist. No. CA2007-03-082, 2008-Ohio-4502, ¶ 25.

{¶ 49} Appellant was convicted of four counts of rape, in violation of R.C. 2907.02(A)(1)(b). Two of the counts concerned anal intercourse, count three concerned vaginal intercourse, and count four involved fellatio. The relevant provisions of the statute provides, "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." *Id.* As noted in the first assignment of error, sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons

- 14 -

regardless of sex; and without privilege to do so, the insertion, however slight of any part of the body * * * into the vaginal or anal opening of another."  R.C. 2907.01(A).

{¶ 50} At trial, W.C. testified that when she was nine years old, appellant picked up her and her bicycle, took her into his house, and repeatedly sexually assaulted her.  W.C. stated that two of the sexual assaults occurred when appellant penetrated W.C. vaginally with his penis and "stuck his penis in [her] mouth."  The other two sexual assaults arose when appellant engaged in anal intercourse with her.  She stated that appellant "lifted up my leg and put his penis inside my butt."  She explained that this hurt very badly and that the sexual assaults caused her to bleed from her anus and her vagina.  W.C. testified that appellant did not ejaculate during these incidents and that she drank beer and used the restroom twice, once on appellant's bedroom floor.

{¶ 51} The physician who examined W.C. stated that during the examination he observed redness and abrasions in W.C.'s genital area and W.C. complained of pain in her anal area.  A medical record was introduced which showed that a nurse documented dried blood in W.C.'s vagina.  Additional tests were conducted from samples of W.C.'s mouth, vagina, anus, chest, and legs.  Appellant's DNA was found on W.C.'s chest and legs but not in W.C.'s mouth, vagina, and anus.  Dr. Thackeray and a forensic scientist testified that it is common to not have findings in the genital area when a child has been sexually assaulted.  They noted that this is true especially when the perpetrator does not ejaculate and when the victim drinks and uses the restroom.

{¶ 52} The investigating detective also testified and explained that he found a girl's bicycle in appellant's home.  He stated that he found girl's clothes, two cans of beer, adult clothes, and reddish stains on a mattress in appellant's bedroom.  Upon forensic testing, the stains contained W.C.'s DNA.  The Detective also stated that he felt something wet and smelled urine on appellant's bedroom floor.  Further, appellant and W.C.'s fingerprints were

found on the bicycle and W.C.'s blood alcohol content tested at .01.

{¶ 53} We find that appellant's convictions were not against the manifest weight of the evidence. Initially, we note that appellant's convictions regarding the vaginal intercourse and fellatio were supported by the manifest weight of the evidence due to W.C.'s testimony and the redness in W.C.'s genital region. Additionally, we disagree with appellant's contention that his convictions regarding the anal intercourse were in error because there was no physical evidence corroborating W.C.'s testimony. Although there was no forensic DNA evidence to establish anal intercourse, Dr. Thackeray and the forensic scientist explained that this is consistent with child sexual abuse cases. Moreover, there was plenty of other physical evidence that corroborated W.C.'s testimony. This court has previously stated that, "[i]t is well settled that the testimony of a rape victim, if believed, is sufficient to support each element of rape * * * [f]urther, not all rape victims exhibit signs of physical injury." *State v. Woodward*, 12th Dist. No. CA2011-02-036, 2011-Ohio-6019, quoting *State v. Reinhardt*, 10th Dist. No. 04AP-116, 2004-Ohio-6443, ¶ 29.

{¶ 54} The jury in this case was in a better position to view the witnesses, observe their demeanor, and assess their credibility, and was free to believe or disbelieve all, part, or none of their testimony. *See State v. Woodward*, 12th Dist. No. CA2011-02-036, 2011-Ohio-6019, ¶ 35. Here, the jury obviously found W.C.'s testimony to be more credible and chose to believe her version of the events rather than appellant's proffered version. After reviewing the entire record, weighing the inferences and examining the credibility of the witnesses, we cannot say the jury clearly lost its way so as to create a manifest miscarriage of justice requiring appellant's convictions for rape to be reversed.

{¶ 55} Appellant's fourth assignment of error is overruled.

{¶ 56} Judgment affirmed.

- 16 -

HENDRICKSON, P.J., and M. POWELL, J., concur.